## EX PARTE ROWLAND.

1. The county commissioners of a county in Alabama who were required by statute to levy and assess such a special tax not exceeding one per cent upon the real and personal property as would be sufficient to meet the semi-annual interest falling due upon certain bonds of the county, discharged their duty when a valid and sufficient levy of a tax had been made, and everything done to enable the collector to proceed; and the Governor of the State was notified of the failure, if such were the case, of the collector to give bond for the collection of any taxes other than those levied for general purposes.

2. A *mandamus* will, therefore, not lie against the commissioners "to cause the tax to be collected;" and so much of the command of a writ sued out of the Circuit Court for the District of Alabama as attempted to impose that duty upon them, being in excess of the jurisdiction of the court, is void.

3. The commissioners, being adjudged to be in contempt of that command, and imprisoned therefor by order of the Circuit Court, this court, upon a writ of *habeas corpus*, directs that they be discharged.

PETITION for a writ of *habeas corpus*.

This is an application for a writ of *habeas corpus* to procure the discharge of Peter M. Rowland, D. C. Shultze, and R. C. Germany from the custody of the marshal of the United States for the Middle District of Alabama. The facts, as shown by the return to a rule to show cause heretofore made, may be stated as follows: —

On the 31st of December, 1868, the General Assembly of Alabama passed an act to authorize counties, towns, and cities to subscribe to the capital stock of railroad companies. The sections of the act material to the present case are the seventh, eighth, ninth, and twelfth. These are as follows: —

"SECT. 7. *Be it further enacted*, that the court of county commissioners of said counties in which the electors shall have voted in favor of said subscription, are hereby authorized and required to levy and assess in the same manner as is now required by law for the collection of State and county taxes, such tax as may be neces-

.sary to meet the interest falling due semi-annually on said bonds, and such other reasonable amount, to be determined by said court, as will pay the expenses of assessing.and collecting said tax and for issuing said bonds : *Provided*, that in no case shall such tax exceed one per cent per annum upon the value of the real and personal property in said county, as yearly assessed and returned to the proper officers.

"Sect. 8. *Be it further enacted*, that the courts of county commissioners in the various counties in which such subscriptions shall have been made, as hereinbefore provided, are hereby authorized and required to require the tax-assessors and tax-collectors to assess and collect said tax. Then said courts of county commissioners shall be, and they are hereby, invested with all the powers, privileges, and rights, and bound by the same duty of proceeding against said tax-collectors and tax-assessors, and their sureties, as are vested in, granted to, and imposed upon the auditor of public accounts by law, for the amount of said taxes not assessed, collected, and paid over, or misapplied.

"Sect. 9. *Be it further enacted*, that the tax assessors and collectors in the various counties which shall have voted for subscription, as hereinbefore provided, are hereby invested and empowered with all the rights and remedies for collecting said tax as are now provided by law for the collection of State and county taxes, and be bound by the same duties, and that the same pains and penalties as are now prescribed by law shall attach to all persons for failing to render a tax-list or for rendering a false list."

"Sect. 12. *Be it further enacted*, that the courts of county commissioners of the various counties are hereby vested with power to do any and all acts to carry out all the provisions of this act, which are not inconsistent with the act itself, and the laws of the State and the United States." Pamph. Laws, 1868, pp. 516, 517.

Under the authority of this act the county of Chambers issued a series of coupon bonds to the Eufaula, Opelika, Oxford, & Guntersville Railroad Company. On the 25th of May, 1875, Dix & Co., subjects of Spain, recovered a judgment against the county in the Circuit Court of the United States for the Middle District of Alabama, for $2,040.50 and costs on account of unpaid coupons cut from these bonds. Execution was issued on this judgment, and returned " no property found," Aug. 6, 1875. On the 19th of November, 1875, an alternative writ of *mandamus* was issued from the Circuit

Court, on the petition of Dix & Co., directed " to P. M. Rowland, judge. of probate of Chambers County, Alabama, and *ex-officio* judge of the court of county commissioners of said county, and J. H. Forman, R. C. Germany, W. J. Grady, and D. C. Shultze, members of said court of county commissioners," commanding them " to levy and assess, in accordance with the provisions of said act of the General Assembly, . . . such a tax upon the real and personal property in said county of Chambers as will satisfy the said judgment, with interest and costs, and that they continue to levy and assess said tax as aforesaid, from time to time, until said judgment is fully satisfied, with interest and costs," or show cause on the 3d· of December why they ought not to be required to do so. No cause being shown against the writ, the court, on the 17th December, issued a peremptory writ with the following command : —

" Now, therefore, you, the said P. M. Rowland, judge as aforesaid, and R. C. Germany, J. H. Forman, W. J. Grady, and D. C. Shultze, members of and composing the court of county commissioners of said county, are hereby commanded forthwith and without delay to levy and assess, and cause the collection of, in accordance with the provisions of said act of the General Assembly of said State of Alabama, such a tax upon the real and personal property in said county of Chambers as will be sufficient to satisfy said judgment, with interest and costs, and that you continue to levy and assess said tax and·cause the same to be collected, as aforesaid, from time to time, until said judgment is wholly satisfied, with interest and costs of suit, and how you shall have executed this writ make known to us, to the judge of this court, at the next term of said court, on the first day of said term, to wit, on the first day of May, A. D. 1876."

On the 24th of April, 1876, the court of county commissioners, at a regular adjourned term, made the following order, which was duly recorded : —

" On the seventeenth day of December, 1875, a peremptory *mandamus* was issued out of the Circuit Court of the United States at Montgomery, Ala., and executed on the commissioners of said county on the 14th of February, 1876, at the suit of Dix & Co., commanding the commissioners' court of Chambers County to levy a tax for the purpose of paying a judgment in said court in favor

of said Dix & Co. against said county, rendered at the May Term, 1875, for the sum of two thousand and forty and $\frac{50}{100}$ dollars, and fifty-one dollars costs, and that they report their action in the premises to the May Term, 1876, of said court. Now, as required by said order, it is ordered that a tax of one-fourth of one per cent, on the value of the real and personal property of Chambers County, be levied for the purpose above set forth, and that the tax-collector proceed to collect said tax as required by law."

In obedience to the command of the peremptory writ, the commissioners, on the 3d of May, made return that they had levied the tax as required, and accompanied their return with a copy of the order entered to that effect. Nothing more was done in the suit until May 23, 1881, when, on motion of Dix & Co., the return to the peremptory writ was quashed, and a rule entered on the court of county commissioners, "as well as the members thereof, to wit, P. M. Rowland, judge of probate and *ex-officio* judge of the said court of county commissioners, and to J. H. Forman, R. C. Germany, W. J. Grady, and D. C. Shultze, who were members of and together constituted said court of county commissioners" when the peremptory writ of *mandamus* was served, to appear forthwith and show cause why an attachment should not issue against them and each of them for not obeying the command of the writ. This rule was served on Rowland, Shultze, and Germany on the 29th of May. Forman and Grady had died before the rule was entered. The surviving members of the court of county commissioners made return to the rule on the 16th of July, as follows : —

"In this case a rule *nisi* having, on the twenty-fifth day of May, 1881, issued out of said court, commanding P. M. Rowland, as probate judge of Chambers Co., Ala., and *ex officio* a member of the court of county commissioners in and for said county, and J. N. Forman, R. C. Germany, W. J. Grady, and D. C. Shultze, members of said court of county commissioners, to appear instanter, or as soon as duly served with said rule *nisi*, and show cause why an attachment should not issue against them and each of them for violating and disregarding the peremptory writ of *mandamus* heretofore issued and served upon them at the suit of said Dix & Co., the said P. M. Rowland, judge of probate and *ex officio* a member of

said court as aforesaid, begs leave to make the following return,
and to show cause under oath as follows why he should not be
attached for contempt of the said Circuit Court of the United
States:

"He respectfully states that he was at the service of said per-
emptory writ of *mandamus,* has ever since been, and is now, judge
of the court of probate in and for said county of Chambers, and as
such *ex officio* a member of the court of county commissioners in
and for said county, and that on the twenty-fourth day of April,
1876, the court of county commissioners of said county of Cham-
bers, at a regular term of said court, levied a tax of one-fourth of
one per cent on the assessed value of the real and personal prop-
erty of the taxpayers of said county of Chambers, to pay off and
discharge the judgment mentioned in the peremptory writ of *man-
damus* issued and served on him and the members of said court, as
aforesaid, which said levy is sufficient to pay off and discharge said
judgment, together with all interest and costs of suit — the assessed
value of the taxable property of said county for said year 1876
being one million six hundred and thirty-one thousand five hun-
dred and sixty-six dollars, and the levy of one-fourth of one per
cent thereon is more than sufficient to pay off and discharge the
judgment, together with all interest and costs. A copy of said
levy is hereto attached, marked 'Exhibit A,' and made part of this
return. Affiant, said P. M. Rowland, gave notice to J. G. Weaver,
the then tax-collector of said county, and requested him to col-
lect the said one-fourth of one per cent, levied as aforesaid for the
purpose aforesaid. Said J. G. Weaver, tax-collector, as aforesaid,
refused to collect said taxes upon the ground that he had previ-
ously qualified under the act of the legislature of Alabama, approved
on the fourth day of March, 1876, by giving a bond for the collec-
tion of the State and county taxes, for general and not for special
purposes; and his successor, J. M. Driver, who is the present tax-
collector of said county, executed his official bond in the same
manner, and has upon the same ground refused to collect said
special taxes, so levied by said court as aforesaid; and that the
said P. M. Rowland notified the governor of Alabama, in the man-
ner and within the time provided by law, of the failure of each of
said tax-collectors to make a bond for the collection of special
taxes. The said P. M. Rowland has done all that the law author-
ized him to do in relation to the levy and collection of said taxes.
Under the laws of Alabama, the said P. M. Rowland, as judge of
probate of Chambers County and *ex officio* a member of the court

of county commissioners of said county, is simply the presiding officer of the said court of county commissioners, and has no authority to vote as a member of said court, except in cases of a tie, a thing that has not occurred in any matter growing out of the assessment or collection of the said special taxes to pay said judgment, as aforesaid. If in anything affiant has been mistaken in his duties in the premises, he is willing to correct his mistakes, and do whatever this honorable court may require. At no time has said P. M. Rowland been actuated by any intention to disobey the mandate of this honorable court, and if he has omitted any duty, it has been through mistake of his official duties, and not from any attempt to evade or oppose the authority of this honorable court. All of which is respectfully submitted.

"PETER M. ROWLAND.

"Sworn to and subscribed before me, this     day of June, 1881.
"J. W. DIMMICK,
"U. S. Com'r Mid. Dist. of Ala."

"R. C. Germany and D. C. Shultze show cause as follows why they should not be attached for contempt of said Circuit Court for disobedience to the peremptory writ of *mandamus* mentioned in the above return of P. M. Rowland: Wm. J. Grady and James H. Forman were members of the court of county commissioners of said county of Chambers on the twenty-fourth day of April, 1876, and on that day, in obedience to the peremptory writ of *mandamus*, mentioned in the above return of P. M. Rowland, the said Germany, Shultze, Forman, and Grady, who constituted said court of county commissioners, on said day, at a regular term of said court, levied one-fourth of one per cent upon the assessed value of the real and personal property of the taxpayers of said county of Chambers, to pay off and discharge the judgment mentioned and described in the peremptory writ of *mandamus* served on them, together with all the interest due on said judgments, and the costs of suit, and instructed the then tax-collector to collect the same. Said levy was sufficient to pay off said judgment, as shown by the return of said P. M. Rowland; and the then tax-collector, and his successor in office, the present tax-collector of said county, have refused to collect the same, for the reasons set forth in the return of Judge P. M. Rowland, above set forth.

"Some time in the year 1878 J. H. Forman, and some time in the year 1880 Wm. J. Grady, died, and John H. Seroyer and John H. Higgins have been elected as their successors in office,

and are now members of the court of county commissioners of said county.

:. "Affiants further state that they are plain men, not learned in the law; that they never knew that there was any other duty devolving on them in relation to the collection of said tax than the levy of a sufficient tax to pay said judgment, with interest and costs of suit, until the service of the rule *nisi* in the present case.

'· Affiants honestly believed that when they had levied said tax and ordered the tax-collector to collect the same, they had done all they were required to do, and until the service of the rule *nisi* they did not know they were required to do anything more; and whatever duty they may have omitted to perform, was omitted through innocent or ignorant mistake of their duties; that they are willing and now offer to perform any and every duty required of them in relation to causing said taxes to be collected. All of which is respectfully submitted.

"D. C. SHULTZE.<br>"R. C. GERMANY.

"Sworn to and subscribed before me, this fourteenth day of June, 1881.

"J. W. DIMMICK,<br>" U. S. Com'r for said Mid. Dist. of Ala."

On the same day the return was filed the court made the following order: —

"The respondents then filed their respective answers to said rule, which were considered and held in all respects to be insufficient, and to furnish no excuse or exoneration for their failure to obey said writ. Said respondents, P. M. Rowland, D. C. Shultze, and R. C. Germany, are therefore adjudged to be guilty of contempt of this court in relation to said writ, but sentence is hereby suspended;-and this cause continued until the next term of the court, in order that said respondents may have an opportunity by that time to pay said judgment, with interest and costs; and said respondents are each required to be and appear before this court upon the first day of the next term of this court, to wit, upon Monday, the seventh day of November, A. D. 1881, at 12 o'clock, M., to certify obedience to this order, and to receive such sentence as the court may deem meet to pronounce in the premises."

And on the 21st of November the following: —

"In this proceeding by attachment for contempt, all the parties this day appeared in this court, and were further heard by this

court touching the matters of contempt involved in this proceeding. And it appearing to the court that at the last term of this court, to wit, on July 16, 1881, the respondents, the said Rowland, Shultze, and Germany, were fully heard as to the said matters of contempt in disobeying the said peremptory writ of *mandamus* duly issued out of this court theretofore to them and duly served on them, and that upon said hearing the said respondents were duly and properly adjudged and found by this court to be guilty of contempt of this court in relation to said peremptory writ of *mandamus* mentioned in this proceeding for contempt and in disobeying said last-mentioned writ, but that said respondents were required to appear in this court on the first day of this term to receive such sentence as this court may deem meet to pronounce in the premises; and it is now made further to appear to this court that said respondents have not obeyed said peremptory writ of *mandamus*, nor certified any such obedience, but still continue to disobey said writ of peremptory *mandamus*, and that said respondents are guilty of said contempt in disobeying said peremptory writ of *mandamus*, and that the judgment of said Dix & Company mentioned in that writ, and in respect to which that writ was issued, remains wholly unpaid and unsatisfied and of full force, and that the amount due upon said last-mentioned judgment, including the principal and lawful interest thereon and the costs up to this day, is thirty-one hundred and fifty-two dollars:

"It is, therefore, considered, ordered, and adjudged, by this court, that the said respondents, the said P. M. Rowland, D. C. Shultze, and R. C. Germany, are guilty of said contempt in disobeying as well as in continuing to disobey the said peremptory writ of *mandamus*, and the order and command of this court therein, and that for said contempt each of said respondents is here and now sentenced by this court to pay to the United States, as a fine for his said contempt, the sum of one thousand and eighty-eight dollars, and to be and to stand imprisoned in the common jail of Montgomery County, in the State of Alabama, until the said fine hereby imposed upon him, and all the costs of this proceeding for contempt, are paid; that, in addition to said fines hereby imposed upon each of said respondents respectively, the sentence of this court also is, that said respondents pay all the costs of this proceeding, and stand imprisoned, as aforesaid, until the whole of said costs shall be paid. But the court further orders and adjudges, that if the said judgment of said Dix & Co., under and in respect to which said peremptory writ of *mandamus* issued, and also all the costs of this proceeding

and of the proceedings in which said peremptory *mandamus* issued, shall hereafter be paid and satisfied in full, and such satisfaction be entered on the execution docket or minutes of this court before the said fines are paid, then and in that event all further proceedings under said sentence of this court shall thereupon cease, and the said respondents shall thence be discharged from imprisonment under said sentence."

The marshal shows this order as the cause of his imprisonment of the parties named therein who are the petitioners here.

The case was argued by *Mr. John T. Morgan* and *Mr. James L. Pugh* in support of the petition, and by *Mr. Samuel F. Rice* in opposition thereto.

Mr. Chief Justice Waite, after stating the case, delivered the opinion of the court.

The single question we have to consider on this application is, whether the order of the Circuit Court, made on the 21st of November, is sufficient authority to the marshal for the detention of the persons he holds under it; and that question, as is conceded on both sides, depends entirely on the power of that court to require the court of county commissioners to do what its members have been held to be in contempt for not doing. If the command of the peremptory writ of *mandamus* was in all respects such as the Circuit Court had jurisdiction to make, the proceedings for the contempt are not reviewable here. But if the command was in whole or in part beyond the power of the court, the writ, or so much as was in excess of jurisdiction, was void, and the court had no right in law to punish for any contempt of its unauthorized requirements. Such is the settled rule of decision in this court. *Ex parte Lange*, 18 Wall. 163; *Ex parte Parks*, 93 U. S. 18; *Ex parte Siebold*, 100 id. 371; *Ex parte Virginia*, id. 339.

It is also settled that more cannot be required of a public officer by *mandamus* than the law has made it his duty to do. The object of the writ is to enforce the performance of an existing duty, not to create a new one. In the present case the law made it the duty of the court of county commissioners to levy the tax required to pay the judgment rendered by the

Circuit Court.   This levy was to be made in the same manner
as was required by law for the collection of State and county
taxes.    Whatever, therefore, the court of county commis-
sioners was bound to do to secure the collection of State and
county taxes, the Circuit Court had jurisdiction to require it
to do in respect to this special tax.   Sect. 8 also made it the
duty of the county commissioners to require the tax-collector
to collect the tax; and for that purpose they were invested
with all the powers, privileges, and rights, and bound by the
same duty of proceeding against tax-collectors and their sure-
ties as were vested in, granted to, or imposed upon the auditor
of public accounts, for the amount of taxes not assessed, col-
lected, and paid over, or misapplied.   The commissioners had
no authority to collect the tax.   That duty was, by sect. 9, put
on the tax-collector, who was invested with all the rights and
remedies and bound by all the duties he had by law for the
collection of State and county taxes.

The court of county commissioners, while called a " court,"
is in fact the board of officers through whom the affairs
of the county are managed.   The duties of this board, at
least so far as this case is concerned, are administrative, not
judicial.   The county is a body corporate, and the court its
governing body.   The judge of probate is, *ex officio*, a member
of this body.   In performing his duties in that capacity he
acts not as a judge of probate, but as county commissioner.
The *mandamus* went against him in this case as commissioner,
not as judge.   No question arises here as to the power of the
courts of the United States to imprison a judge of a State
court for what he does, or omits to do, in his judicial capacity.
As commissioner, this probate judge was amenable to the
authorized process of the courts of the United States in the
same manner and to the same extent that his associates were.

The laws of Alabama provide for a tax-assessor, a court of
county commissioners, a tax-collector, and a county treasurer.
The services of all these officers are required in the levy, col-
lection, and disbursement of taxes.   The assessor lists the
taxable property in the county, and values it for taxation.
His list, when made out, constitutes the assessment; and he
enters it in a book, called the assessment-book, which, when

completed, he delivers to the probate judge.   It is then examined by the probate judge, the county commissioners, county treasurer, and clerk of the Circuit Court, who constitute a board of equalization, of which the probate judge is, *ex efficio*, chairman.   This board equalizes the assessment, and corrects any errors that may be discovered.   When the equalization has been perfected and all the necessary corrections made, the chairman certifies to that effect on the assessor's book, and the assessment thus becomes the basis of taxation in the county for the current year.   The court of county commissioners then levy the amount of county taxes required.   The taxes thus levied are to be collected by the tax-collector, who is an independent officer, and makes his settlements with the county treasurer and not with the court of county commissioners.   He is chargeable with all the taxes levied ; but upon his report the commissioners may allow him credit for such as he had been unable to collect and for erroneous assessments.

The peremptory writ of *mandamus* was served on the 14th of February, 1876.   The first regular meeting of the commissioners thereafter was on the second Monday in April, and at an adjourned day in that meeting the order levying the tax was made.   On the 4th of March before, an act was passed by the General Assembly of Alabama (Pamph. Laws 1875–76, 93) to the effect that whenever any county of the State should be authorized by law, or required by the judgment of any court, to levy any tax for any special purpose, otherwise than the taxes authorized by the general revenue laws of the State, the tax-collector might execute separate bonds, — one for the collection of the taxes levied under the general laws, and one for the collection of taxes levied for special purposes, or in obedience to the requirements of the judgment of a court.   If he should give one of the bonds and fail or refuse to give the other, it was made his duty to proceed to collect the taxes for which he gave the bond, and of the probate judge to notify the governor of his failure to give the other.   The governor was then to appoint a special tax-collector for the collection of the taxes for which the regular tax-collector had failed to give bond.

The performance of the duty of the court of county commis-

sioners in respect to the levy of taxes was complete when a valid
levy had been made, and all had been done which was neces-
sary to enable the collector to proceed with the collection. The
duty to collect rested entirely on the collector. He accounted
for his collections to the treasurer, who alone was the custodian
of the moneys of the county, and paid them out to the parties
entitled thereto, on proper vouchers. If the collector failed to
perform his duty, he could be compelled by *mandamus* to do
what was required of him by law; but it is nowhere made the
duty of the court of county commissioners to institute any
such proceeding. As the duty of collection was one the tax-
collector owed to the judgment creditor as well as the com-
missioners, we see no reason why the creditor could not himself
apply for the necessary writ. If the collector made collections
which he failed to pay over, he and his sureties could be pro-
ceeded against summarily for the moneys in his hands. So,
too, if he failed by his own fault or neglect to make his collec-
tions, he and his sureties would undoubtedly be liable to an
action on that account; but we have been referred to no stat-
ute which made it the official duty of the court of county com-
missioners or the auditor of public accounts to bring such an
action. Under the law as it stood when the bonds sued on
were issued, the auditor could obtain a summary judgment for
certain penalties imposed by law upon a tax-collector for the
non-performance of his duties, but it was not made his abso-
lute duty to institute the necessary proceedings for that pur-
pose. And, besides, the writ in this case does not require the
commissioners to do any such thing.

We proceed now to the consideration of the return of the
commissioners to the rule upon them to show cause why they
should not be attached for disregarding the writ. Their state-
ments in the return have not been controverted, and are
consequently to be taken as true. While the return to the
*mandamus* itself was quashed, the return to the rule stands in
the place of a return to the writ for all the purposes of this pro-
ceeding. The command of the writ was that the commis-
sioners levy, assess, and *cause to be collected* the necessary tax.
They return that they did levy the tax and order its collection
by the tax-collector. It is true that while the writ ordered the

tax to be levied on the real and personal property *in* the county, the levy as ordered was on the real and personal property *of* the county. Clearly there can be no difference between what was done and what was ordered to be done. A tax was levied, and that implies a levy on property which was in law taxable. The property belonging to the county was exempt. It was so expressly provided by law. Pamph. Laws 1868, p. 298, sect. 3; id. 1875–76, p. 44, sect. 2, par. 2. Consequently the return that a tax had been levied, which the tax-collector was directed to collect, necessarily implied that the levy was made on the taxable property in the county, and the Circuit Court could not have understood otherwise. It is, then, to be taken as a fact that the levy which was commanded was actually made, and on the proper assessment. It follows, therefore, that the fine, for the non-payment of which the commissioners are now held in custody, must have been imposed because they failed to cause the tax which was levied to be collected. The orders themselves indicate as much on their face, for in the first the sentence was delayed after the commissioners were adjudged to be in contempt, to give them time to pay the judgment; and in the second, the fine is to be remitted and the contempt purged if the judgment shall be paid.

The case, then, clearly presents itself to us a proceeding against the commissioners for contempt in not causing the tax to be collected after they had done all they were required to do to charge the tax-collector with the duty of making the collection. This we cannot but think was beyond the jurisdiction of the Circuit Court. The duty of the commissioners in respect to the collection of the tax is performed when they have done all that is necessary to authorize a qualified tax-collector to enter upon his work under the law. The original act of 1868 made it the duty of the collector of general taxes to collect the special tax as he did the others. If the act of 1876, which permitted the regularly elected collector to disqualify himself from collecting the special tax by not giving the new bond, was unconstitutional as to Dix & Co.'s coupons, which the Supreme Court of the State is reported to have decided recently in the case of *Edwards* v. *Williamson*, the judgment creditors might, by proceedings in *mandamus* against him, have

required that he make the collection, notwithstanding the change in the law; but we are referred to no statute which makes it the duty of the court of county commissioners to test that question in that way or any other. As the law stood on its face the commissioners and the probate judge had performed their duty when the governor was informed, in the proper way, of the failure of the tax-collector to give his bond for the collection of the special tax. Whatever it is within the power of the creditor to compel the tax-collector to do without the intervention of the court of commissioners, the commissioners are not required by the writ against them to do. Their whole duty in respect to the collection of the tax is performed when they have so far set the machinery of collection in motion that others are required to keep it going. Their obligations in this respect end where those of another public officer begin. They cannot be required by *mandamus* to compel another officer to do his duty, if, without their intervention, the moving party can himself accomplish the same result. It is true that, under sect. 12, general powers are conferred on the commissioners to carry out the provisions of the bonding act; but this does not change the rule of their liability to the bondholder in the particular now under consideration. The general principle which governs proceedings by *mandamus* is, that whatever can be done without the employment of that extraordinary remedy, may not be done with it. It only lies when there is practically no other remedy. As a necessary consequence the writ must issue directly against him whose duty it is to do the thing which the parties seek to have done; for, as was said in *Reg.* v. *Mayor of Derby* (2 Salk. 436), "it is absurd that the writ should be directed to one person to command another." The question here is, whether it was the duty of the tax-collector under the law to collect the special tax which the commissioners had levied. That question the creditor could have had determined in a direct proceeding against the collector, without the help of the commissioners. It follows, that if the command of the writ against the commissioners was what the Circuit Court has construed it to be, it was in excess of the jurisdiction of the court, and consequently void. If the command of the writ was in excess of jurisdic-

tion, so necessarily were the proceedings for contempt in not obeying. We are led, therefore, to the conclusion that the order of the court under which the marshal holds the petitioners in custody was a nullity, and that a writ of *habeas corpus* should issue as prayed for, unless the parties are willing that an order of discharge shall be entered without further proceedings.

It is consequently                                   *So ordered.*

NOTE. — *Ex parte Alabama* was argued at the same time and by the same counsel as the preceding case, and the writ of *habeas corpus* prayed for was refused, as the relief thereby sought could be had under that case.