Kathryn C. Mayer,
Plaintiff-Appellant,

*vs.*

Arthur P. Mayer, Sr.,
Defendant-Appellee.

*Supreme Court on Appeal, June 6, 1957.*

*Stephen E. Hamilton, Jr.,* Wilmington, for plaintiff-appellant.

*Joseph H. Flanzer,* Wilmington, for defendant-appellee.

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, JJ., sitting.

WOLCOTT, Justice: The facts giving rise to this controversy and ultimately to this appeal are as follows:

On March 2, 1946, the plaintiff and defendant were married and, thereafter, lived together on a farm owned by the defendant near Newark, Delaware. One child was born of the marriage. Early in 1950 they separated and in January of that year the defendant was ordered to pay a monthly sum for the support of the minor child.

In 1952 the defendant instituted an action for divorce against the plaintiff in the Superior Court of New Castle County on the ground of wilful desertion. The Superior Court denied a divorce.

Thereafter, early in 1954 the defendant sold all of his farm equipment and some time in the month of June, 1954 left Delaware, taking with him his personal belongings, with the intention, according to his testimony, of establishing his domicile someplace in the west where a drier climate would benefit his health.

Some time in the latter part of June, 1954, the defendant arrived in Nevada. On August 9, 1954, he commenced in Nevada an action for divorce on the ground that he and the plaintiff had lived separate and apart for three consecutive years next preceding the commencement of the action. In 1954 this was not a ground for divorce in Delaware.

On September 1, 1954, the plaintiff commenced this action in the Court of Chancery seeking to enjoin the defendant from proceeding further with his Nevada divorce action. On the same day, the Chan-

cellor signed an order restraining the defendant from proceeding further with his Nevada divorce. A copy of the restraining order was sent to the defendant in care of his Nevada counsel, who received it on September 7, 1954. On the same day the Sheriff made return of the summons showing personal service upon the defendant by leaving a copy of the summons in the presence of John Mayer, the father of the defendant, at his home near Newark, Delaware.

On September 16, 1954, the Nevada court entered a final decree of divorce, dissolving the marriage between plaintiff and defendant. On September 17, 1954, the defendant married in Nevada his third wife.

On September 27, 1954, the defendant appeared specially in the Court of Chancery and moved to dismiss the plaintiff's complaint. This motion was treated by the court as a motion to quash the purported personal service of the summons upon the plaintiff. On the same day, the plaintiff filed a motion for substituted service pursuant to 10 *Del.C.* § 365 and on October 8, 1954, the defendant filed a motion to quash the order for substituted service.

On December 14, 1954, the Vice Chancellor in an unreported opinion granted the defendant's motion to quash the Sheriff's return of purported personal service of the original summons and also set aside the order for substituted service because at the time the order was entered the defendant was not in default.

Thereafter, on April 18, 1955, the defendant filed an answer to the complaint, raising as defenses that the subject matter of the complaint was moot, the defendant having been granted a final decree of divorce in Nevada, and had since remarried in reliance thereon; that the Court of Chancery was without jurisdiction over his person because he had not been served with process, and because he was not domiciled in the State of Delaware at the time of institution of the suit.

The defendant thereupon moved for summary judgment and the plaintiff prayed for a citation holding the defendant in contempt of court for violation of the restraining order of September 1, 1954.

On October 26, 1955, the Vice Chancellor in an unreported opinion denied the plaintiff's motion for a contempt attachment, and the defendant's motion for summary judgment, holding that the ultimate question to be decided was the domicile of the defendant upon which depended the question of whether or not the defendant's divorce decree in Nevada was entitled to full faith and credit in Delaware. After final hearing on July 24, 1956, in an unreported opinion, the Vice Chancellor found that the defendant was domiciled in Nevada as of June 27, 1954 and that, accordingly, full faith and credit must be accorded to the divorce decree obtained by the defendant in the State of Nevada. On July 31, 1956, an order was signed dismissing the complaint and entering a judgment for the defendant from which plaintiff appeals.

The plaintiff first contends that since the defendant had notice of the issuance of the restraining order but, nevertheless, permitted the Nevada divorce litigation to proceed, he was in contempt of the Court of Chancery and, accordingly, the Vice Chancellor should not have permitted him to defend the action until such time as he had purged himself of his contempt by obtaining a nullification of the Nevada divorce.

The parties differ as to which rule of the Court of Chancery is applicable to the giving of notice of the issuance of a restraining order and the subsequent holding of a party violating it in contempt of the order. The defendant urges that the matter is governed by Rule 65(b), *Del.C. Ann.*, providing "every temporary restraining order shall be effective only from the time it is served on the person restrained, or his attorney, if an appearance has been entered". The plaintiff on the other hand urges the applicability of Rule 70(b) providing that an attachment for contempt may be ordered for disobedience of a restraining order upon the filing in the cause of an affidavit showing service on the defendant "or that the defendant has knowledge of the order".

We do not think this appeal, however, is to be decided by a determination of which rule governs. The rulings of the Vice Chancellor raises squarely the question of the right of a contumacious party

to defend his contempt of a court's restraining order on the ground that the court was without jurisdiction to enter it.

The plaintiff refers us to several decisions in support of her contention that the question of legality of a restraining order, or the jurisdiction of the court to order its issuance, may not be availed of as a defense to a citation for contempt in having disobeyed it.

The first of these authorities is *Kempson v. Kempson,* 61 *N.J.Eq.* 303, 48 *A.* 244. We think the circumstances of the *Kempson* case differ from those in the case before us. It is quite apparent from reading the very lengthy and detailed opinion in the *Kempson* case that the defendant who had violated the restraining order in question had remained outside of the territorial limits of the State of New Jersey for the purpose of avoiding the service of process, that he continued to remain domiciled in New Jersey throughout the entire time, and that his action in instituting an action for divorce in North Dakota was in fact a fraud upon the North Dakota courts and the courts of New Jersey. It furthermore appears that actual physical delivery of a copy of a restraining order was made to the defendant personally pursuant to the order of the New Jersey court.

Furthermore, as a preliminary to holding the defendant in contempt, the Vice Chancellor in the *Kempson* case examined into the question of the defendant's domicile and determined that the defendant had remained domiciled in the State of New Jersey and that, since his wife was also domiciled there, clearly New Jersey had jurisdiction over the marital status of the parties which the defendant, in violation of the restraining order, had attempted to change by the North Dakota litigation. The court concludes, therefore, that because of these circumstances New Jersey had such jurisdiction over the person of the defendant as to empower it to control his actions with respect to the marital status.

The facts of the *Kempson* case and the course of action followed by the Vice Chancellor make it clear in our opinion that it is not authority for the position taken by the plaintiff before us to the effect that no preliminary inquiry may be made of the jurisdiction of the court to enter the order, violation of which has placed the party in contempt.

The plaintiff next relies on *United States v. Shipp*, 203 *U.S.* 563, 27 *S.Ct.* 165, 51 *L.Ed.* 319. This was the case of a Sheriff who had cusody of a prisoner sentenced to die, having received notice by telegram of the granting of a stay of execution by one of the Justices of the Supreme Court of the United States, and despite this notice having entered into a conspiracy which resulted in the death by lynching of the prisoner. Shipp urged in his opposition to a citation for contempt that the petition for certiorari which had resulted in the order of stay of execution was frivolous and that there were no constitutional grounds upon which the judgment of conviction could have been reversed. The Supreme Court of the United States quite properly held that if the petition was frivolous and if no jurisdictional ground existed for the hearing of the case by the Supreme Court, it was for that court alone to determine the issue. It is, of course, obvious also that the writ of the United States could have brought Shipp into court.

The third case relied on by the plaintiff is *United States v. United Mine Workers*, 330 *U.S.* 258, 67 *S. Ct.* 677, 91 *L.Ed.* 884. In that case a union and its president were held in contempt of a restraining order of a federal court. In defense of the citation for contempt, it was urged that the restraining order was illegal in that an act of Congress had prevented its issuance in labor disputes. The conviction of contempt was sustained. However, the court determined initially that the act of Congress relied on did not prohibit the issuance of an injunction in a labor dispute of the kind concerned. Hence, instead of being authority for the position taken by the plaintiff, it seems to us it is authority for the defendant's position since the court, before affirming the conviction for contempt, examined into the legality of the restraining order issued—that is to say, whether or not the issuing court had jurisdiction to enjoin the acts prohibited.

Furthermore, both the *Shipp* case and the *United Mine Workers* case cite with approval the case of *Ex parte Rowland*, 104 *U.S.* 604, 26 *L.Ed.* 861, which case laid down the rule that a court has no right to punish for contempt the violation of an order which, in whole or in part, is beyond the power of the court to issue. The rule expressed in *Ex parte Rowland* is that before holding a person who has violated

an order of court for contempt for such violation, it must be established that the order issued was within the power and jurisdiction of the court.

Finally, the plaintiff relies upon *DuPont v. DuPont, C.A.* 422, an unreported case in the Court of Chancery. In that case, while an action for separate maintenance by an estranged wife was pending, the defendant husband went to Florida and commenced an action for divorce. The wife filed a complaint seeking to enjoin the Florida suit. An order restraining the husband from proceeding in Florida was issued. Numerous affidavits were filed to the effect that the defendant husband had left Delaware and removed to Florida for the purpose of avoiding process in Delaware, and of defeating the jurisdiction of the court in a pending cause. An order of substituted service was made and the defendant was ordered to appear and to cease prosecuting the action for divorce in Florida. Despite this, the defendant husband did not appear and, upon the basis of this showing, an order for the issuance of an attachment for contempt was entered and a warrant for the arrest of the defendant husband placed in the hands of the Sheriff for service in the event the defendant husband returned to Delaware. To date, the husband has not returned to Delaware and the warrant of arrest is as yet unserved. There is no holding, however, that in the event he should be arrested at some future time that he would be denied an opportunity to defend the charge of contempt on any ground available to him.

Under the circumstances, *DuPont v. DuPont* is quite similar to the *Kempson* case and is an instance of an attempt by a court to preserve its jurisdiction over a marital status which is sought to be defeated by the contemptuous action of one of the spouses.

As we read the decisions cited to us by the plaintiff, they do not differ from the general rule applicable to punishment for contempt arising from violation of an order of court. The party charged is always at liberty to defend his disregard of the court's order by showing that the order was void for lack of jurisdiction. In a contempt proceeding based upon the violation of an injunction, the only legitimate inquiry to be made by the court is whether or not it had

jurisdiction of the parties and of the subject matter. Subject to this limitation the court will not listen to an excuse for the contemptuous action based upon an argument that the order in question was imperfect or erroneous. No person may with impunity disregard an order of the court having jurisdiction over the subject matter and of the parties. 12 *Am.Jur., Contempt,* § 26; 17 *C.J.S. Contempt* § 14.

This is precisely the rule the Vice Chancellor followed. He entered into a hearing on the question of domicile of the defendant, and concluded that the defendant was domiciled in Nevada and thus not subject to the jurisdiction of Delaware. Accordingly, he held that the restraining order, which the defendant had ignored, was void and, accordingly, adjudged the defendant not guilty of contempt. This disposes of the plaintiff's first point.

Secondly, and finally, the plaintiff argues that the Vice Chancellor's holding with respect to the domicile of the defendant was erroneous, arguing that there was no evidence before the court below to support the conclusion that the defendant established a Nevada domicile in June, 1954, and that, accordingly, Nevada was without jurisdiction to decree his divorce from the plaintiff. Upon this premise, plaintiff argues that the defendant's Nevada divorce, under the rule of *Williams v. North Carolina,* 325 *U.S.* 226, 65 *S.Ct.* 1092, 89 *L.Ed.* 1577, is not entitled to full faith and credit and may therefore be collaterally attacked. If the plaintiff is correct in his major premise, *i.e.,* the non-existence of the defendant's Nevada domicile, it follows that the Nevada decree is a nullity.

The Vice Chancellor held the fact to be that the defendant was domiciled in Nevada in June, 1954. The plaintiff urges the reversal of this finding on the authority of *New York Trust Co. v. Riley,* 24 *Del.Ch.* 354, 16 *A.2d* 772, and *Taormina v. Taormina Corp.,* 32 *Del. Ch.* 18, 78 *A.2d* 473. These cases lay down the rule that the question of domicile is one of law based on fact; that the abandonment of a former domicile requires the acquisition of a new dwelling place with the intention to make that home; and that mere absence from home for a long period of time for purposes of health, business, pleasure, or other special purposes will not alone prove the abandonment of a former domicile and the acquisition of a new one. Furthermore, these

cases hold that the burden of proving a change of domicile rests always upon the one asserting the change.

The Vice Chancellor held that the defendant had successfully met the burden of proving his change of domicile to Nevada. We have examined the record and are of the opinion that there is sufficient to justify his finding. We think we would not be justified in overturning a finding based on sufficient evidence, even though that evidence is not absolutely conclusive. The Vice Chancellor heard the testimony and we would hesitate to substitute our judgment of the weight and credibility to be given it, when all that is before us is a printed transcript.

We think the Vice Chancellor found the facts to be that the defendant left Delaware in June, 1954, with the intention of abandoning at that time his Delaware domicile and establishing a new domicile in one of the western states with a dry climate for reasons of health. At the time he left Delaware he had no particular location in mind. On his arrival in Nevada, however, he settled there with the intent to make it his permanent home or, in other words, to become domiciled in that state. He continued, thereafter, to reside in Nevada, pay taxes in Nevada, vote in Nevada, be employed in Nevada, and have numerous financial transactions in Nevada. These facts, coupled with the severing of his ties in Delaware, we think, are sufficient to support the Vice Chancellor's finding that his domicile was in Nevada, particularly since the establishment of a domicile is largely a question of intent, evidenced by objective actions.

Nor does the obvious fact that at least one of the motives which led him to abandon his Delaware domicile was the possibility of a successful divorce action against this plaintiff change the fact of domicile and the jurisdictional result. Nelson on Divorce, § 33.34.

We conclude, therefore, that the finding below that the defendant was domiciled in Nevada must be accepted with the consequent result that full faith and credit must be given the defendant's Nevada divorce and that he must be held not to have been in contempt of the Court of Chancery.

The judgment below is affirmed.