**DIVISION OF CHILD SUPPORT
ENFORCEMENT (Tracy
LOGUE), Petitioner,**

v.

**Ralph J. LOGUE, Respondent.**

Family Court of Delaware,
New Castle County.

Submitted: May 29, 1991.
Decided: July 2, 1991.

Jeanne LoCastro, Asst. Atty. Gen., Div. of Child Support Enforcement, Wilmington, for petitioner.

Ralph J. Logue, pro se.

## OPINION

KEIL, Judge.

### I. NATURE OF THE PROCEEDINGS.

The parties are before the Court for a Review de Novo of the findings and recommendations entered by a Master on April 4, 1991. The Court heard testimony from Respondent Ralph J. Logue (hereinafter Father), proceeding *pro se*, and argument from Jeanne LoCastro, Esquire, of the Division of Child Support Enforcement (DCSE) for Petitioner Tracy Logue (hereinafter Mother), at a hearing on May 29, 1991. Mother was not present at the hearing. Her current whereabouts are unknown.

### II. THE FACTS.

The parties are the parents of Justin, born July 28, 1981, and Brandon, born January 6, 1983. Pursuant to a Court Order dated April 29, 1986, Father was obligated to pay $91.00 per week for the support of the two children who were at that time living with Mother. Mother had applied for and received public assistance. The terms of the Support Order mandated payments directly to DCSE, as assignee of Mother's right to receive child support payments pursuant to 31 *Del.C.* § 504.[1]

Both parties agree that the Support Order terminated as a matter of law on June 16, 1989 when Father gained physical custody of the children at the direction of the New Castle County Police Department. They have remained in his care continuous-

ly since that date. Both parties further agree that Father failed to make the support payment to DCSE as required by the Court Order. According to Father, he made direct payments to Mother, totaling $7,200.00, from May 1, 1986 to April 31, 1989. Father's unrebutted testimony revealed that he was confronted weekly by Mother at his place of employment for the child support. Rather than send the payments to DCSE, Father handed over cash to Mother.

Further, Father initiated a fraud investigation claim subsequent to his gaining custody of the children, based upon Mother's continued receipt of welfare benefits. The results of that investigation are unknown, though it is agreed that Mother continued to receive benefits beyond her entitlement.

### III. THE ISSUE.

The issue in this case is two-fold. The initial inquiry is whether Father is in contempt of Court. If yes, the Court must next determine the proper sanction for Father's contemptuous behavior.

### IV. THE COURT'S ASSESSMENT.

▌ In order to sustain a finding of contempt, the following criteria must be met: (1) There must be a valid mandate, order, or judgment; (2) The Respondent must have had the ability to obey the order, mandate, or judgment; and (3) The Respondent must have disobeyed the mandate, order, or judgment without just cause. *See DCSE (O'Malley) v. Lucas,* Del.Fam., File No. A–8182, Gallagher, J. (June 5, 1987), *and* 17 C.J.S. *Contempt,* §§ 12–19.

▌ It is apparent that all three elements are present in this case. The Support Order of April 29, 1986 was a valid, binding obligation upon Father. Father's ability to pay is evidenced by his actions in giving $50.00 per week to Mother when she appeared at his place of employment. While this amount is less than that or-

1. Section 504(a) provides that: "(T)he application and/or receipt of public assistance under Section 503(d) of this Title shall act as an automatic and immediate assignment of all rights of support for the applicant and/or recipient and any dependent child. Such assignment shall have the full force and effect of law to the State and shall be collectible by the Bureau of Child Support Enforcement." * * *

dered, no evidence was presented indicating that Father was unable to meet the full obligation. Finally, it is agreed that Father disobeyed the Order without just cause by paying support directly to Mother, rather than to DCSE.

It is clear from the above that Father is in contempt of Court. The question then becomes, what is the appropriate sanction? The State argues that an assessment of arrears, without regard to any payments made to Mother is the appropriate remedy for Father's disobedience to the Order. Father, while admitting to contempt and agreeing that an assessment of arrears is appropriate, argues that the amount should be reduced by the amount he paid directly to Mother.

■■■ A party subject to a valid Court Order may not with impunity disregard that Order. *Mayer v. Mayer*, 36 Del.Ch. 457, 132 A.2d 617 (1957). However, an equity court's contempt powers may be utilized in a flexible manner to best resolve the problem at hand. *City of Wilmington v. American Federation of State, County, and Municipal Employees, AFL–CIO, Local 320*, Del.Ch. 307 A.2d 820 (1973).

■■ Father undoubtably disobeyed the method of payment dictated by the support Order. However, this violation was technical. Father did substantially comply with the essence of the order, which was to contribute to the support of his two minor children. His disobedience was not intended to defraud the State or shirk his obligation to his children. He made support payments to the custodial parent of his children with the expectation that the funds would be utilized for their care and maintenance. With these considerations in mind, the Court holds that Father is entitled to a credit for the cash payments he made directly to Mother.

The Division argues that allowing Father a credit for the direct payments to Mother would establish a precedent for other obligors to disregard the requirement of making payments directly to DCSE. The Court is not persuaded by this argument.

■■ Moreover, this decision does not leave DCSE without a remedy for recoupment of the excess welfare payments made to Mother. The State may, by law, recover the payments received by Mother from Mother herself.

Pursuant to the terms of 31 *Del.C.* § 510, Mother was under an obligation to inform the Division of her receipt of the child support payments from Father.[2] Her failure to do so subjected her to a civil suit for recovery. Therefore, the Division may sue Mother directly to recoup the monies paid directly to Mother by Father.

The equitable considerations in this case support such a suit by the State against Mother. She requested and accepted payments from Father even though she was aware that she had assigned her right to child support to DCSE. She failed to inform the State, as was required by statute, of her receipt of this income. She continued to receive AFDC benefits long after the children were removed from her custody. As a result of her actions and her fraudulent representations to the State that she was entitled to receive welfare benefits in excess of her entitlement, she was unjustly enriched at the expense of the State. It is fair and equitable that she be held responsible for that portion of the arrears which result from her own wrongdoing.

---

**2.** Section 510 provides: "If at any time during the period assistance payments are being made to any person, such person becomes possessed of any property, real or personal, or of any income in excess of the amount of such property or income last declared by him to the Department, he shall notify the Department promptly of the receipt and possession of such property or income and the Department shall, in accordance with rules established by it, reconsider the eligibility of such person to receive such assistance or the amount of assistance to which entitled according to the circumstances. Any excess paid to any person by reason of his failure to report as required by this Section shall be recoverable in a civil action against such person or against his estate."

## V. THE RULING.

1. Father is found in contempt of Court.
2. Arrears are set at $4,736.52 as of March 21, 1991.
3. The current wage attachment shall continue until the arrears are satisfied.

IT IS SO ORDERED.