81   533
99   365

# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## Robertson v. Tapscott's Adm'r and als.

## Same v. Watts and als.

### March 11th, 1886.

1. CHANCERY PRACTICE—*Judicial Sale—Purchaser—Receiver—Estoppel—Case at bar.*—Under decree in 1855 T. sold house and lot to J. W. Sale was confirmed. J. W. died. His heir, C. W., in 1860 sold it to R., the receiver in the suit, at $1,500. J. W.'s estate still owed $1,292 on the purchase. Possession was given to and has ever since been kept by R., though he has not paid a cent. After many years a commissioner was appointed to look into the transactions of R. as receiver. In 1883 he reported that there was in R.'s hands, as receiver, over $10,000, including $1,292, principal and $2,124.48 interest, the purchase money aforesaid. R. made no exceptions to the report, which was confirmed; and in April, 1883, a decree was based on this report, directing R., as receiver, to pay out this money. R., still defaulting, in April, 1884, a decree was entered directing resale of the house and lot unless in 60 days R. should pay the purchase money. Both these decrees treated R. as the purchaser, and R. assented to them by endorsement thereon. The sale was advertised. In September, 1884, R. got an injunction upon the grounds that he bought the property of the heir of J. W., the purchaser at the judicial sale; that C. W. contracted it to R. with covenants to perfect the title in himself and convey it free of incumbrances; that he had not done so; that the title was bad, and that he wanted the sale rescinded. On motion to dissolve—

HELD:

    1. R. is estopped to deny he was the purchaser, after his acquiescence in the proceedings treating him as such.

2. If the title is bad, R. bought with knowledge of the facts. He has no standing in equity ; but must look to his covenants in a court of law.

3. The motion for dissolution should be allowed.

2. IDEM—*Injunction—Parties.*—Whether injunction be awarded in a pending suit, person to be restrained must become party to the bill whereon the application is based.

Appeals from decrees of circuit court of Amherst county, rendered October 17, 1884, and April 17, 1885, in the cause of *Tapscott's Adm'r* v. *Shelton et als.*, and in the cause of *John B. Robertson et als.* v. *Watts et als.*, respectively. The decrees were adverse to John B. Robertson, who obtained appeals therefrom to this court.

Opinion states the case.

*L. S. Marye,* for the appellant.

*Horsely & Brown,* for the appellees.

RICHARDSON, J., delivered the opinion of the court.

These are respectively appeals from decrees of the circuit court of Amherst county, one of which was rendered on the 17th day of October, 1884, in the cause therein pending of *Tapscott's Adm'r* v. *Shelton et als.*, and was a decree against the receiver therein, John B. Robertson, the appellant in the first of these causes. The other decree appealed from was rendered on the 17th day of April, 1885, in the second of these causes, entitled *John B. Robertson et als.* v. *Charles M. Watts et als.* Both of these suits have grown out of the said suit of *Tapscott's Adm'r* v. *Shelton et als.* The facts and circumstances, so far as necessary to a proper understanding of the questions here involved, are these: David H. Tapscott died intestate in the year 1885, and shortly thereafter the suit of

*Tapscott's Adm'r* v. *Shelton et als.* was brought, the object of which was to administer in equity the intestate's estate. The cause was matured and a decree entered therein as early as the year 1855, under which a sale of the land and slaves of the intestate was had, in which sale was included a house and lot at Amherst C. H., which is the sole subject of controversy here. Robert Tinsley was appointed receiver in said cause of *Tapscott's Adm'r* v. *Shelton et als.* At said sale the house and lot above referred to was purchased by Jesse M. Watts, who seems to have executed the required purchase money bonds, and the sale was confirmed.

Although the proper and necessary accounts were ordered in the cause, nothing seems to have been done further until the year 1867, when J. B. Robertson, the appellant in the first of these causes, was appointed receiver in said cause of *Tapscott's Adm'r* v. *Shelton et als.* In the meantime Jesse M. Watts, the purchaser of said house and lot, had died, leaving $1,292 of the purchase money due from him therefor unpaid. In the year 1860 Charles M. Watts, the brother, and one of the heirs-at-law, of Jesse M. Watts, sold said house and lot to the appellant, John B. Robertson and A. F. Robertson at the price of $1,500, and they executed to said Charles M. Watts, their three bonds therefor, with S. F. Robertson as surety ; and at the same time, October 16, 1860, said Charles M. Watts and wife, by deeds with covenants of general warranty, conveyed said house and lot to said John B. and A. F. Robertson, free of all incumbrances, the concluding clause in said deed being in these words: "And the said Watts binds himself hereby to perfect the outstanding title of said house and lot in himself, and guarantees the same to said Robertson." Afterwards, to-wit: on the 1st day of October, 1862, A. F. Robertson sold his interest in said house and lot to John B. Robertson, the latter thus becoming the sole beneficiary of

said purchase and assuming payment of all the purchase money to said Charles M. Watts. From the date of said purchase from Charles M. Watts, John B. Robertson has had the possession, use and enjoyment of said property undisturbed; but has never paid either the purchase money contracted to be paid to Charles M. Watts therefor, or the balance of $1,292, with interest, left unpaid by the original purchaser, Jesse M. Watts.

Many years having passed since the sale of the real estate of D. H. Tapscott, and those entitled to the proceeds not having received the same, a special commissioner was appointed to look into the accounts and transactions of said receiver, John B. Robertson, in the case of *Tapscott's Administrator* v. *Shelton and als.* The special commissioner, Robert M. Brown, returned his report showing that there was in the hands or under the control of John B. Robertson, receiver, and for which he was chargeable, principal and interest, as of the 15th day of April, 1883, the sum of $10,000 for distribution, after leaving in said receiver's hands the sum of $995.34 to meet any outstanding debts or charges against the intestate's estate ; said sum of $10,000 being made up of $3,068.59 deposited by said receiver in the First National Bank of Lynchburg, as per certificate of deposit dated 12th of May, 1876, and other sums which had gone into said receiver's hands, as appeared by previous reports of the receiver himself.

Of the $10,000 thus for distribution $2,407.72 was reported by the special commissioner as distributable to two first-class or preferred debts ; and the residue, $7,592.28, to second-class creditors as designated in the report of said special commissioner. In this report the commissioner throughout treats John B. Robertson as the real purchaser of the house and lot at Amherst Courthouse ; and charges him, as one of the items, making up said sum for distribution, with $1,292, the amount

of the two bonds of Jesse M. Watts remaining unpaid, and interest thereon from the 19th of November, 1855, to the 15th of April, 1883—twenty-seven years, four months, sixteen days, $2,124.48—making $3,416.48 ; thus showing said Robertson, as substituted purchaser, instead of Jesse M. Watts, to be indebted to Tapscott's estate in that sum on account of said house and lot. This report was excepted to by said John B. Robertson, receiver, as to certain small items. But *quoad* the matters here in question there was no exception.

On the 12th day of April, 1883, the cause of *Tapscott's Administrator* v. *Shelton* was heard on the papers formerly read, the report of Special Commissioner Brown, and the exceptions thereto, and upon the reports of said receiver, John B. Robertson; and the court, not then passing upon said exceptions, or upon the reports of said receiver, at his instance, referred the same back to Commissioner Brown, but then entered a decree in all other respects confirming the said special commissioners report, and directing said receiver, John B. Robertson, to withdraw from the papers said certificate of deposit, collect the same, and out of the proceeds and the other funds reported in his hands, pay to Henry Loving, executor, of John Thompson, junior, one of the creditors of the intestate, Tapscott, the sum of $2,022.43, with interest from the 15th day of April, 1883, and to the several other creditors, in the report mentioned, the sums respectively reported in their favor. Said receiver did not comply with the terms of this decree, and it became necessary to take other steps necessary to secure the proper distribution of the fund which had remained for so many years in the hands of the receiver.

On the 12th day of April, 1884, said receiver (Robertson) being still in default, a decree was entered in said cause in which this language occurs: "Upon consideration whereof, upon the motion of the parties (by counsel) entitled to the

proceeds of the real estate heretofore sold in this cause; and John B. Robertson, the purchaser of the house and lot sold under a former decree, being in default as to the payment of a large balance of purchase money, as shown by the report of Special Commissioner Robert M. Brown; and the said John B. Robertson waiving notice as to what followeth, the court doth adjudge, order, and decree that unless the said John B. Robertson do, within sixty days from the rising of this court, pay to J. Thompson Brown, who is hereby appointed a receiver to collect the same, the balance of the purchase money due by him upon the house and lot at Amherst Courthouse, as ascertained by the said report of Special Commissioner Robert M. Brown, then the said J. Thompson Brown is hereby appointed a commissioner, whose duty it shall be, after, &c.,   *   *   * to sell said house and lot to the highest bidder at public auction."   *   *   *   And by the same decree, on the motion of Henry Loving, executor of John Thompson, Jr., deceased, a rule was awarded against said John B. Robertson, receiver, returnable to the first day of the then next term, to show cause why he had not paid to said Loving, executor as aforesaid, the amount directed to be paid by the decree entered in said cause at the April term, 1883—the decree of April, 1884, expressly treating John B. Robertson as the purchaser of the house and lot (as the report of Special Commissioner Brown and the previous decree of April, 1883, had done), and directing a resale of same for the purchase money remaining due and unpaid by him, was, when prepared, submitted to said Robertson, and he endorsed thereon his consent that it should be entered, and it was so entered.  In obedience to said decree J. Thompson Brown, commissioner, advertised said house and lot for sale, the sale to take place on the 16th day of September, 1884.  And, notwithstanding his consent to the decree for sale, John B. Robertson and others, just three days before the

sale was to take place, presented to the judge of said circuit court their bill against Charles M. Watts and others setting forth sundry grounds of complaint, and, among other things, praying for an injunction to restrain said commissioner from making sale of said house and lot. And on the 13th of September, 1884, the injunction was granted as prayed for.

At the October term, 1884, John B. Robertson made answer to the rule, which had issued against him as receiver, under the decree of April term, 1884, in the case of *Tapscott's Adm'r* v. *Shelton and als.* Briefly stated, his answer was that he had paid to Thompson's executor, as directed by said decree of April, 1884, the sum of $997.12, in part of the sum directed to be paid, and that the balance then due chiefly represented the debt due by Jesse M. Watts to the fund in *Tapscott* v. *Shelton* for the purchase of the house and lot at Amherst Courthouse, which was erroneously charged to him (Robertson) as receiver in said cause, and the payment of which had been enjoined, and that the injunction suit was then pending in said circuit court. And the answer to the said rule concludes by insisting that while said injunction is pending, and until said Watts' debt should come into the hands of said Robertson, receiver, it would be inequitable to enforce against him as receiver in said cause, by award of execution or otherwise, the payment of the aforesaid balance due said Thompson's executor, except as to the excess over the amount of the Watts' debt. And he refers to said bill of injunction as part of his answer. At the same term (October, 1884,) a decree was entered in said cause of *Tapscott* v. *Shelton*, modifying the former decree of distribution by crediting said receiver with the $997.12 paid to Thompson's executor, and by deducting from $7,592.28— the amount due and distributable to second-class creditors— the sum of $3,416.48, theretofore charged by the report of Special Commissioner Brown and by two previous decrees treated

as due from said John B. Robertson on account of purchase money for said house and lot, leaving then in the hands of said receiver for distribution among the second-class creditors of D. H. Tapscott the sum of $4,175.80. In other words, the decree was modified precisely to suit the views set forth in the answer of John B. Robertson to said rule; yet from this decree he obtained an appeal to this court, and thus came into existence the cause of *John B. Robertson* v. *D. H. Tapscott's Adm'r and als.*, the first of the two causes here.

We come now to state briefly the circumstances which gave rise to the second of these causes—that of *John B. Robertson and als.* v. *Charles M. Watts and als.*, the injunction granted in which has already been referred. to.

It seems that A. F. Robertson, who, with John B. Robertson, was a joint purchaser of the house and lot from Charles M. Watts, and their surety, Sarah F. Robertson, in the purchase-money bonds to said Watts, had died; and John B. Robertson, the sole owner of the house and lot, and who, of all of them, is alone interested, brought this injunction suit in the name of himself and W. B. Robertson, executors of A. F. Robertson, deceased, and in his name as administrator of Sarah F. Robertson, deceased, and in his name as surviving partner of A. F. and John B. Robertson, and in his own right against Charles M. Watts and numerous others, some of whom were residents, but a large number of them non-residents.

The bill sets forth the purchase by John B. and A. F. Robertson of the house and lot at Amherst Courthouse from Chas. M. Watts, which had been previously purchased by Jesse M. Watts at a judicial sale under a decree in the case of *Tapscott's Administrator* v. *Shelton and als.*, and alleges that the bonds executed for the purchase money to Charles M. Watts, were by him assigned to the then receiver (Tinsley), in the case of *Tapscott* v. *Shelton,* and that judgment at law was afterwards recov-

ered thereon in the name of Chas. M. Watts for the benefit of the administrator and creditors of D. H. Tapscott; that said bonds were executed in consideration of the sale of said house and the lot by Charles M. Watts, and especially of the covenant and deed of said Charles M. Watts to perfect the outstanding title to said property in himself and to guarantee the same to his said vendees. And the bill further alleges that at the time of said sale by Charles M. Watts, he represented to his said vendees, John B. and A. F. Robertson, that he had been substituted as purchaser of said property instead of said Jesse M. Watts, which representation they relied on, but had very recently found it to be untrue; that said Watts had failed to perfect the said title in himself as by his said covenant he was bound to do. And it is alleged that the title to said property is defective, because D. H. Tapscott bought it from H. L. Davies, who bought it from Thomas Landrum, since deceased, and that there is no deed of record from Landrum to Davies, though the heirs of said Davies, since his death, and since the death of D. H. Tapscott, have conveyed same to the heirs of the latter. And, with singular inaccuracy and inconsistency, it is alleged in the bill that the decree of April, 1884, was a decree to enforce the judgment recovered in the name of *Charles M. Watts for, &c.* v. *John B. and A. F. Robertson* and their surety, Sarah F. Robertson, on the bonds executed for the purchase money for said house and lot to Charles M. Watts, and alleged to have been turned over by Charles M. Watts to the receiver in the case of *Tapscott* v. *Shelton* as collateral security for the purchase money remaining due from Jesse M. Watts. And the bill prayed that Charles M. Watts be required to perfect said title in himself, according to his said covenant, or, in default thereof, that the contract of sale from Charles M. Watts to John B. and A. F. Robertson be rescinded. Process was duly served on all the home defendants, except Charles M. Watts, but he, with others, the broth-

ers and sisters of the full blood and heirs-at-law of Jesse M. Watts, deceased, came forward and filed in the cause a paper executed by them under seal, disclaiming any and all interest in the house and lot in question. Publication was duly had as to all the non-resident defendants, who were numerous, among them being the brothers and sisters of the half-blood and heirs-at-law of said Jesse M. Watts, and also the heirs-at-law of said Thomas Landrum, in whom it was alleged that the legal title to said house and lot was outstanding. At the December rules, 1884, J. Thompson Brown, commissioner, who had been enjoined from making sale of said house and lot, filed his answer, denying that the bonds executed by John B. and A. F. Robertson to Charles M. Watts were by the latter assigned to the receiver in the case of *Tapscott* v. *Shelton,* as collateral security for the purchase money left unpaid by Jesse M. Watts; denying that the decree in *Tapscott* v. *Shelton,* of April, 1884, was to enforce the judgment at law on the bonds of John B. and A. F. Robertson to Charles M. Watts, as alleged in the bill; and calling the attention of the court to the report of Special Commissioner Brown, treating John B. Robertson, as the purchaser of said house and lot, and charging him with the balance of the purchase due by Jesse M. Watts, and interest thereon, amounting, as of the 15th of April, 1883, to $3,416.48, to the fact that John B. Robertson acquiesced therein, and that without exception in that respect, the said report was confirmed by the decree of April, 1883; and further calling attention to the fact that the subsequent decree of April, 1884, also treated said John B. Robertson as the purchaser of said property, and for his default in the payment of the balance, so as aforesaid ascertained to be due from him, directed said property to be resold, which decree was consented to in writing by said John B. Robertson, insisted that each and every pretension set forth in said bill was groundless. None of the other defendants answered, and the bill was taken for confessed as to them.

On the 17th day of April, 1885, the two causes of *Tapscott, Administrator*, v. *Shelton and als.*, and *John B. Robertson and als.* v. *Charles M. Watts and als.*, were brought on and heard together, when a decree was entered dissolving the injunction awarded in the second of these causes, on the 13th day of September, 1884, and in the first of these causes appointing other commissioners and directing them to make sale of said house and lot on the usual terms, unless said John B. Robertson should by a day named, pay said balance of purchase money, to-wit: $3,416.48, with interest on $1,292—the principal thereof, from the 15th day of April, 1883. And from this decree an appeal was also obtained, and thus came into existence the second of these causes—*Robertson and als.* v. *Watts and als.*

We are clearly of opinion that the appeal in each of these cases is utterly without merit. In fact, whilst the complications attempted to be injected into the plain suit of *Tapscott's Administrator* v. *Shelton and als.*, brought to administer the decedent's estate in equity, are such as would challenge the most studied efforts at expertness in the delay of justice, yet a full and fair statement of all the facts and circumstances is amply sufficient, without more, to refute every contention of the appellants.

The two causes are necessarily incapable of convenient and satisfactory treatment except in one opinion. The manifest tendency of the contention on the part of the appellants in both cases is to bring about almost endless confusion and delay in the administration of D. H. Tapscott's estate (already most unreasonably delayed without any apparent just cause), by making the case of *Tapscott's Administrator* v. *Shelton and als.*, the common receptacle for the settlement of many matters, not only not germane, but wholly disconnected with and foreign thereto.

We have seen that the first of these cases originated in the

appeal from the decree rendered in *Tapscott's Administrator* v. *Shelton and als.*, on the 17th day of October, 1884. The objection to this decree is stated in the petition for appeal, in referring to the rule which issued against the appellant under the previous decree in said cause of April, 1884. The appellant there says: "To this rule your petitioner filed his answer, at the October term, 1884, showing that he had paid under the decree of April, 1883, the full amounts due to most of those entitled thereunder (including decree in favor of said Loving for $2,022.43), and $997.12 in part of said decree in his favor for $4,671.66, leaving in his (Thompson's) hands as receiver, only some $500, applicable to said decree, and that the residue of said decree represented the aforesaid Watts' debt, erroneously charged to said receiver by the aforesaid report of Commissioner Brown as in the hands of your petitioner, as receiver; and your petitioner protested against being decreed to pay the aforesaid sum of $3,416.48, being the amount of the said Watts' debt, until the title of said Watts' property, the subject of the aforesaid injunction, should have been perfected." Such, the appellant says, was the substance and effect of his answer. We shall presently see that the answer referred to by no means sustains the statement in the petition. And in his petition the appellant, Robertson, insists that although the Watts' debt of $3,416.48, which was included in the aggregate funds charged to him, was still wholly uncollected, the court, instead of suspending the decree against him to the full amount of the Watts' debt, only suspended to the extent of $2,102.22 thereof, and gave a new decree in favor of Thompson's executor for $2,569.44, the effect of which was to leave in force against said Robertson, as receiver, decrees to the amount of $1,314.26, already paid in full. This contention of the appellant, too, is wholly untrue, as shown by the decree itself. In the report of Special Commissioner Brown, referred to, the appellant was

treated throughout as the purchaser of the house and lot at Amherst Courthouse, and was charged with the two bonds of Jesse M. Watts, principal, $1,292, and interest thereon from November 19, 1855, to April 15, 1883, twenty-seven years, four months and sixteen days, $2,124.48, making the sum of $3,416.48, with which he was charged as the balance due on said house and lot. And although the appellant excepted to said report as to certain small items, not touching the matter in hand, he made no objection to being treated as purchaser, nor did he except to the report so charging him; on the contrary, with his full knowledge and acquiescence, the report was in in this respect fully confirmed by the decree of April, 1883, which directed said Robertson, as receiver, to disburse the funds in his hands, made up in part by said sum of $3,416.48, in the order of distribution set forth in said special commissioner's report. The total fund thus ascertained and then decreed for distribution was $10,000, of which $2,407.72 went to two preferred debts, the remainder, $7,592.28, was decreed for distribution among numerous second-class creditors, and among them and first in the list was John Thompson, Jr., to whom was decreed $4,671.66. This last named sum was not paid, and after a year of further indulgence to this defaulting receiver, at the April term, 1884, John B. Robertson, waiving notice, on the motion of the parties entitled to the proceeds of the real estate, theretofore sold in the said cause of *Tapscott's Administrators* v. *Shelton et als.*, a decree was entered therein setting forth that it appeared to the court that John B. Robertson, the purchaser of the house and lot, sold under a former decree, was still in default as to the payment of a large balance of purchase money, and directing a resale of said house and lot, unless said Robertson should, within sixty days thereafter, pay to the receiver thereby appointed for the purpose, said bal-

ance of purchase money, as ascertained by the report of Special Commissioner Brown.

Not only did John B. Robertson have notice of this decree, but he approved it by his endorsement thereon before it was entered.   Here, for the second time, we see John B. Robertson not only standing by without objection when judicially treated as the purchaser of this house and lot, and in default as to the payment of the balance of the purchase money *due by him*, but this time deliberately endorsing his approval of the decree over his own signature.   Nevertheless, he now objects to this decree on the ground that the $3,416.48 is the debt of Jesse M. Watts, erroneously charged to him (Robertson) by Commissioner Brown ; erroneously decreed against him by the decree of April, 1883, and because he alone had notice of the decree of April, 1884, when the heirs of Jesse M. Watts should have been before the court.   It cannot be necessary to adduce arguments and authorities to repel such a pretension.   His acquiescence in and approval of the proceedings above referred to, estop him.   And as to the heirs of Jesse M. Watts, in respect to whom we make no decision, they are not here complaining, and the appellant, Robertson, cannot be heard to complain for them.

We come now to the October term, 1884, when the appellant filed his answer to the rule before referred to, and when the decree was entered, in *Tapscott* v. *Shelton*, appealed from. Before filing that answer, John B. Robertson and others, the appellants in the second of these causes, had obtained the injunction aforesaid, stopping the sale of the house and lot, then advertised for sale under the decree of April, 1884, to which said John B. Robertson had assented.   Now what does said answer to the rule show?   It shows, and only shows, that said Robertson, as receiver, had paid under the decree of April, 1883, on the amount decreed in favor of John Thompson, Jr.

the sum of $997.12, and, in the language of the answer itself, "that the balance now" (then) "due chiefly represents the debt due by Jesse M. Watts to the fund in *Tapscott* v. *Shelton* for the house and lot at Amherst Courthouse, which was erroneously charged to this respondent" (Robertson), "as receiver in said cause, and the payment of which has been enjoined," &c. Yet, as has been shown, the petition for appeal represents that answer as showing that John B. Robertson had paid, under the decree of April, 1883, *the full amounts* due to most of those entitled thereunder, including decree in favor of said Loving, executor of John Thompson, Jr., for $2,022.43, and $997.12 in part of said decree in his favor for $4,671.66, leaving in his hands as receiver only some $500.00, applicable to said decree, and that the residue of said decree represents the aforesaid Watts' debt, &c. Thus we see, the statement in this petition is widely variant from the answer to the rule, appealed to to sustain it. Nor is it true that at the time of filing said answer to the rule there only remained in the hands of said receiver some $500, applicable to said decree of April, 1883. On the contrary, it then becoming necessary, by reason of said injunction, to modify and reform the said decree for distribution of April, 1883, the court had a statement made then, as a basis of a new distribution, leaving out said sum of $3,416.48, theretofore charged to said Robertson as part of the gross sum in his hands for distribution. This statement showed that, after deducting from the gross amount—$10,995.34—the sum of $995.34, to meet outstanding claims against Tapscott's estate; $2,407.72 to pay the two preferred debts, and the sum of $3,416.48, charged to said Robertson as the balance due by him on account of said house and lot, the sale of which had been enjoined, there still remained in the hands of said receiver, for distribution among said second-class creditors (the executor of John Thompson, Jr., being one of them), the

sum of $4,175.80, instead of *some* $500, as stated in the petition for appeal. This sum of $4,175.80, the court, by its decree then entered (October 17, 1884), distributed on the basis of said special statement, directed and made, to meet the exigency brought about by said injunction, and of this sum, $2,569.44 was decreed to be paid to the executor of John Thompson, Jr. All this clearly appears by the decree appealed from; yet, in the petition for appeal, it is strenuously insisted that the reform decree of October 17, 1884, did not suspend the former decree of April, 1883, as to the whole of the $3,416.48, but only as to $2,102.22, part thereof.

It is perfectly plain that there is no error in said decree of October 17, 1884, in the case of *Tapscott's Adm'r* v. *Shelton and als.*, and the same must be affirmed.

As to the second of these cases, it is equally plain that there is no error in the decree complained of. Much that has been said in respect to the preceding case of *Robertson* v. *Tapscott's Adm'r and als.* applies with equal force to the case of *Robertson and others* v. *Watts and als.*

The question here presented is a narrow one, and is really the only substantial question connected with this litigation, and that question is as to the validity of the decree of the 17th of April, 1885, dissolving the injunction theretofore awarded, and decreeing a resale of the house and lot at Amherst Courthouse, unless John B. Robertson should, within the prescribed time, pay the said sum of $3,416.48, being the balance due by him on said property, with interest on $1,292, the principal thereof, from the 15th day of April, 1883.

The appellants' first and second assignments of error to the decree of April 17, 1885, may be treated as one. They are (1), that the court erred in admitting J. Thompson Brown, commissioner of sale, as a defendant to the bill; and (2), in refusing to grant a continuance of the cause when it permitted

said commissioner to file his answer at the term at which the decree was rendered. In answer to the first objection it is only necessary to say, the record shows that said answer was filed at the preceding December rules, 1884; and to the second objection, that it does not appear that any motion for continuance was made. The general rule is, that an injunction will not be granted against a person not a defendant to the bill, or not properly brought before the court. 1 Barton's Ch. Pr. 428. The commissioner in this case was the officer of the court directed to execute its decree of sale. He is specially mentioned in the bill as such commissioner, proceeding to execute the decree, and the court asked to restrain him from so doing. The injunction was granted according to the prayer of the bill, and process issued, and was served upon the commissioner. Thus, he was clearly made a party, and properly so made. It is difficult to perceive how the very object of the bill—the prevention of the sale of the property—could have been certainly attained without making, in such a case as this, the commissioner of sale a party. Hence, in *Lyne* v. *Jackson, &c.*, 1 Rand. 119, where the object was to prevent the issuing of a patent by the register of the land office, such register was held to be a proper party, in order to effectuate the relief sought. In 1 Barton's Ch'y Pr. 195, it is said: " The common rule with regard to injunctions is, that they will not be granted to restrain a person who is not a party to the suit; but whether granted in a pending cause or not, the person whose action is sought to be restrained must become a party to the bill or petition upon which the application is based." High on Inj., sections 746–50–51. And we think the rule thus stated by Mr. Barton is the established practice in this State.

The appellants' third and fourth assignments together amount to this: That the court erred in dissolving the injunction and

decreeing a resale of the house and lot at Amherst Courthouse without first adjudicating the question of right, as between the appellants and the heirs of Jesse M. Watts, to said property, and thereby removing the cloud upon the title. It is obvious that there is no cloud upon the title except that invoked by the action of the appellants themselves. Two of them, Jno. B. and A. F. Robertson, bought this property from Chas. M. Watts, one of the heirs-at-law of Jesse M. Watts; executed their bonds for the purchase money with Sarah F. Robertson as surety, and accepted the deed of Chas. M. Watts therefor, with an express covenant that their said grantor should perfect the *outstanding title* thereto and guarantee the same to them. And in the bill it is expressly averred that their said bonds were executed in consideration of said purchase, and especially in consideration of the covenant aforesaid to get in the outstanding title. Thus by the deed which they accepted, and by their solemn averment in their bill, it is clear beyond dispute they had complete knowledge of the state of the title when they purchased and accepted the deed of Chas. M. Watts; and that, having so purchased, their remedy at law on the covenants contained in said deed is complete. Under such circumstances the door of equity is closed to them. And here it may be remarked that for the same reason, there is no merit in the objection that Tapscott's title to the house and lot was defective. But were it otherwise the objection is not well taken; for, while it is true that Tapscott bought the property from Davies, who purchased it from Landrum, and that there is no deed of record from the latter to Davies, yet the contract of sale or title bond from Landrum to Davies is of record, and since the death of the latter, and of Tapscott, the heirs of Davies have conveyed to the heirs of Tapscott, so that practically there is no trouble about the title— Landrum's heirs having been made parties defendant to the bill in this case, and they having asserted no claim. All of

these numerous heirs of Landrum and of Jesse M. Watts are made parties and brought before the court, either by personal service or by order of publication duly executed, except Chas. M. Watts, and he comes voluntarily and files in the cause, and for recordation, his deed disclaiming any interest in the property. What more could he have done? How could he have been more effectually before the court?

All of these utterly untenable claims flow from the groundless insistence in the bill, plainly at war with all the previous acts of Jno. B. Robertson in connection with this property, that the decree in *Tapscott's Administrator* v. *Shelton and als.*, of April, 1884, as well as the decree now under review, were decrees to enforce against Jno. B. and A. F. Robertson and their surety, Sarah F. Robertson, the judgment alleged to have been recovered in the name of Chas. M. Watts, for the benefit of the administrator and creditors of D. H. Tapscott, against said Jno. B., A. F. and Sarah F. Robertson, on the bond executed to Chas. M. Watts by them. This contention, so far from being sustained by the record, is wholly at variance with anything therein contained. The answer of Special Commissioner Brown expressly denies the allegation in the bill that Watts assigned said bonds to the receiver in *Tapscott* v. *Shelton*, as collateral security for the balance of purchase money due from Jesse M. Watts, and there is not in the record an intimation that such was the fact, or that those decrees were rendered to enforce said judgment. On the contrary, the sum expressly charged by the commissioner, and decreed by the court against Jno. B. Robertson, was the amount of Jesse M. Watts' two bonds—$1,292, which, with interest to April 15th, 1883, amounted to $3,416.48—and not the amount contracted to be paid by Jno. B. and A. F. Robertson to Chas. M. Watts. This is demonstrable by a very simple calculation. Jno. B. and A. F. Robertson purchased from Chas. M. Watts, January 1st,

1861, at the price of $1,500; the interest on that sum to the 15th of April, 1883, the date to which Commissioner Brown settled the account, would be $2.025, making, principal and interest, the sum of $3,525, which exceeds the sum decreed by $108.52. Thus falls to the ground this contention of the appellants.

Under these circumstances, the whole matter is at last narrowed to the simple enquiry, Was the injunction properly dissolved? Jno. B. and A. F. Robertson purchased from Chas. M. Watts, one of the heirs-at-law of Jesse M. Watts, and took his conveyance, with a covenant binding him to get in the outstanding title and guarantee it to them. A. F. Robertson sold and conveyed his interest in the purchase to Jno. B. Robertson, who put valuable improvements on the property, and has occupied and used it as his own for some twenty-five years. It is obvious that, except in the event of the insolvency of Jno. B. Robertson, which is not suggested, neither A. F. Robertson nor Sarah F. Robertson, nor their estates, could have any interest in the matter, or be in any way affected. It is evident, therefore, that as to their representatives the injunction was, at the start, improperly granted. And the same is true as to Jno. B. Robertson, he having, by his purchase and deed from Chas. M. Watts, assumed the position of substituted purchaser in place of Jesse M. Watts, deceased, and having been, in effect, recognized as such by the court. There can be no question, then, that the injunction was properly dissolved. This being so, it follows that the decree of April 17th, 1885, directing a resale was right and proper. There is no error in the decree in either case, and both must be affirmed, with costs to the appellees respectively.

DECREE AFFIRMED IN BOTH CASES.