### In re REESE.

(Circuit Court, D. Kansas, First Division. January 15, 1900.)

**1. INJUNCTION—SCOPE—PERSONS NOT PARTIES.**

A person cannot be committed for contempt for the violation of a restraining order made by a federal court in a suit between private persons, to which he was not made a party, either by words of specific or general description, and where he is, moreover, a citizen and resident of another state, who could not be sued by the complainant in such court without his consent.

**2. HABEAS CORPUS—GROUNDS FOR GRANTING OF WRIT.**

A person imprisoned for the violation of an order which did not extend to him, or, if it in terms extended to him, was in excess of the jurisdiction of the court, is entitled to a discharge by the writ of habeas corpus.

This was a proceeding on the petition of John P. Reese for a writ of habeas corpus.

W. H. Rossington, David Overmyer, and Oliver T. Boaz, for petitioner.

J. H. Richards, William C. Perry, C. E. Benton, and Morris Cliggitt, for respondent.

THAYER, Circuit Judge. This is a proceeding by habeas corpus to secure the release of John P. Reese, who was committed for an alleged contempt in disobeying an order of injunction that was issued by the circuit court of the United States for the district of Kansas, Third division. By virtue of an oral agreement of counsel, the case has been submitted for decision upon a written stipulation as to one issue of fact; also upon the petition for the writ, the return thereto, and the annexed exhibits. By these pleadings and exhibits, the following facts are disclosed, which are undisputed:

On June 13, 1899, the Western Coal & Mining Company, a corporation of Missouri, filed a complaint in the circuit court of the United States for the district of Kansas, Third division, which may be characterized, in general phrase, as a bill to enjoin the defendants therein named from resorting to threats, intimidation, or scurrilous epithets for the purpose of preventing miners who so desired from taking service with the coal company, and from resorting to the same means for the purpose of inducing persons already in the coal company's employ to abandon such service. Forty-six persons were made defendants to the bill by name, all of whom were alleged to be citizens and residents of the state of Kansas; and in addition thereto other persons, as it is claimed, were made parties defendant to the bill by the following words of general description in the caption of the complaint, to wit: "And all members of the United Mine Workers' lodges or unions in Crawford and Cherokee counties, in the state of Kansas, and all members of District No. 14 of the United

Mine Workers of America, and all other persons co-operating with them, being citizens of Kansas." The opening paragraph of the complaint alleged that the complainant brought its bill against the persons who were specifically named in the caption thereof, their names being again repeated as in the caption; that "each and all of them are residents and citizens of the state of Kansas, and all members of the United Mine Workers' lodges or unions in Crawford and Cherokee counties, in the state of Kansas, each and all of whom are residents and citizens of the state of Kansas," and that it brought its bill against "all members of District No. 14 of the United Mine Workers of America, citizens of the state of Kansas, co-operating with them, whose names are not known to your orator"; and it prayed leave that it might be permitted "to add thereto the names of such other persons, citizens of Kansas, as may become known, and charge them in apt words as in the premises." The bill, after setting out in detail the wrongs complained of and threatened, prayed the aid of the court, as a court of equity, "to the end that said defendants, and each of them, and all other persons co-operating with them, whose names are not known to your orators, and all members of the lodges or unions of the United Mine Workers of America in Crawford and Cherokee counties and state of Kansas, and all other persons conspiring and combining with them," might be enjoined from committing the various wrongful acts charged in the bill. But it only asked for process of subpœna against those defendants whose names were set forth in the caption of the complaint, as above stated. On July 18, 1899, a temporary injunction was granted, which injunction, as issued and entered of record, was thus entitled, after setting out the name of the court in the usual manner: "Western Coal & Mining Company, Complainant, vs. W. T. Wright, Robert Gilmore, Hugh Bone, et al., and All Members of the United Mine Workers' Lodges or Unions in Crawford and Cherokee Counties, in the State of Kansas, and All Members of District Number Fourteen of the United Mine Workers of America, and All Other Persons Co-operating with Them, Being Citizens of Kansas, Defendants." In the body of the order which was made under the aforesaid caption, the prohibition of the court forbidding the doing of certain acts complained of in the bill was addressed to "the defendants above named, and each of them, and all other persons who have or may combine, confederate, or conspire with said defendants, or either of them." This order was never served on the petitioner, nor was any attempt made to do so, so far as the case discloses; but on October 20, 1899, the petitioner was cited into court to answer the charge of having disobeyed its provisions, and after due service of such citation, and a hearing before the court, was adjudged guilty of contempt for a violation of the injunction, and was thereupon sentenced to imprisonment for three months. The affidavit upon which the aforesaid citation was obtained stated, among other things, that Reese was a member of the national executive board and one of the organizers of the United Mine Workers of America, and that he was a citizen of the state of Iowa, but was in Crawford county, Kan., when the restraining order was issued, and had been in that state repeatedly since that date, and had aided and abetted striking miners in the unlawful acts complained of in the bill. By a stipulation of counsel made on the hearing of the case at bar, it was agreed, in substance, that the petitioner's attorney, in his argument during the hearing of the contempt proceeding, claimed that the order of injunction ran against citizens of the state of Kansas only, and that the petitioner, being a citizen of the state of Iowa, was not within the terms of the order, and that he could not violate it.

From the foregoing summary of the facts disclosed by the pleadings and exhibits, the conclusion is inevitable that the complainant company intended, when it filed its bill, to exclude as parties to the cause all persons except such as were citizens and residents of the state of Kansas, and that it did not make the petitioner a party defendant to the injunction suit, either by name or by words of general description, he being at the time a citizen and resident of the state of Iowa. In framing the complaint, and in framing the caption to the order of injunction, counsel industriously used language which ex-

cludes the idea that any one was intended to be made a party defendant who was not at the time a citizen and resident of Kansas, and they were doubtless influenced to such action by the thought that, if a nonresident of the latter state was named as a party defendant, it might impair the jurisdiction of the court over the other defendants, who were specifically named, within the rule announced in Smith v. Lyon, 133 U. S. 315, 10 Sup. Ct. 303, 33 L. Ed. 635, and Id. (C. C.) 38 Fed. 53, inasmuch as federal jurisdiction was invoked solely on the ground of diverse citizenship. Counsel for the respondent concede, apparently, that the petitioner was not a party to the bill for an injunction; but they point to the general language heretofore quoted, which is found in the prayer for injunctive relief and in the body of the injunction, and insist, in substance, that to render the petitioner amenable to the restraining order, and punishable for its violation, it was not necessary that he should have been made a party to the suit in which it was granted, nor that it should appear that he was a citizen of the state of Kansas.

These propositions will be noticed briefly. It will be readily conceded that, in many contempt proceedings instituted in the federal courts, neither the citizenship of the accused, nor the fact that he is not a party to any case pending in the court whose authority has been set at naught, is of any importance. This is true when a federal court undertakes to punish one who either interferes with its proceedings, obstructs the due execution of its process, or intermeddles with property in its custody. A different rule, however, applies to cases like the one in hand, where the aid of a court of equity is invoked by a private suitor to restrain another from doing a threatened act which is alleged to be wrongful, on the ground that the legal remedy to redress the wrong is inadequate, and complaint is made that a restraining order entered in the case has been disobeyed. In such cases, the order of the chancellor, when made, prohibiting a given act or series of acts, becomes a special law for the governance of the parties to the cause, and such other persons, if there be any, who may assume to do the forbidden act or acts, not in the exercise of an independent right, but merely as the servants or attorneys of those who are named as parties and are expressly enjoined. Chancellor Kent said in Fellows v. Fellows, 4 Johns. Ch. 25: "I have no conception that it is competent to this court to hold a man bound by an injunction who is not a party in the cause, for the purpose of the cause." And the same doctrine has been enunciated in other cases. Iveson v. Harris, 7 Ves. 256; Schalk v. Schmidt, 14 N. J. Eq. 268; Boyd v. State, 19 Neb. 128, 26 N. W. 925; Robertson v. Tapscott's Adm'r, 81 Va. 533, 549; Watson v. Fuller, 9 How. Prac. R. 425. See, also, State v. Anderson, 5 Kan. 90; Land Co. v. Elkins, 22 Blatchf. 203, 20 Fed. 545; Vanzandt v. Mining Co., 2 McCrary, 642, 48 Fed. 770; 2 Joyce, Inj. p. 1327.

In accordance with this doctrine, it is the usual practice, when an injunction issues against a corporation or an individual to restrain the commission of an alleged tort, to prohibit, not only the defendant, but also his servants, employés, and attorneys, from doing the threatened act, and to hold the latter bound by the order, if, with knowledge of its existence, they do that which is forbidden, not in the

exercise of an independent right, but in behalf of their principal. People v. Sturtevant, 9 N. Y. 264; People v. Compton, 1 Duer, 512, 554; State v. Cutler, 13 Kan. 131; Atlantic & P. Tel. Co. v. Baltimore & O. R. Co., 46 N. Y. Super. Ct. 377, 416, 417; Phillips v. Detroit, 19 Fed. Cas. 512. Expressions are found in some cases, notably in Lennon v. Railway Co., 22 U. S. App. 561, 568, 12 C. C. A. 134, 64 Fed. 320 (although in that case the court was dealing with one who was merely a servant of the party who was enjoined), which give some color to the view that an order enjoining a defendant from doing an act alleged to be tortious binds all other persons not parties to the suit who have knowledge of the order, if they are acting in concert with him, although each claims an individual right to do the thing prohibited, and does not act as the servant or attorney of him who is specifically enjoined. The court is aware of no case, however, and none has been called to its attention, where the proposition last stated, that an injunction of the kind last mentioned binds every one who has notice of it, has passed into judgment on a state of facts involving its determination, and, in the absence of controlling authority, the principle does not seem to be one which should receive judicial sanction. It is obvious that, if a person may be restrained from doing an act which he claims an individual right to do that is not derivative, without his being made a party to the cause, either by words of specific or general description, then he may be condemned unheard, and deprived of an asserted right without due process of law. The power of a chancellor does not extend to such limits, nor is there any necessity that it should do so. Torts, when committed by numerous persons, may be treated either as joint or several (Hopkins v. Stave Co., 49 U. S. App. 709, 28 C. C. A. 99, 83 Fed. 912); and, if for any reason the requisite power to enjoin a wrongdoer is not vested in one court, it may always be found lodged in another, and resort should be had to a forum where he may be prosecuted without violating, or seeming to violate, any of those fundamental rules under and subject to which judicial proceedings must always be conducted.

The case, then, presents the following features: The petitioner stands committed for violating a restraining order made in a suit between private persons, to which he was not made a party, either by words of specific or general description. Moreover, as the court in which the suit was brought was one of limited jurisdiction as respects the persons who might be sued therein and subjected to its jurisdiction without their consent, and as the petitioner was a citizen and resident of the state of Iowa, he was not subject to be sued by the complainant in the court by which the order was made, unless he elected to submit himself to its jurisdiction, and such election had not been made when the order of injunction was entered, nor when it is alleged to have been violated, nor subsequently.

We are thus confronted with the question whether a person who is imprisoned under the circumstances aforesaid may obtain his release by a writ of habeas corpus. The determination of this point does not involve a consideration of the nature of the acts constituting the alleged contempt, nor the findings which may have been made with respect thereto, since these matters are not jurisdictional, and

the findings in question are not subject to review in the present pro·ceeding. It is within the province of the court, however, to consider the scope of the injunction, and the power of the court by which it was granted to punish the accused by summary process of contempt for a violation of the same. The restraining order does not profess ·to enjoin persons who are the "servants, agents, and attorneys" of the defendants. These usual words are omitted. Persons of that class are not embraced by the terms of the order. The only language found therein which can include the petitioner are the words, "and all * * * persons who * * * combine, confederate, or conspire with said defendants"; which language must be held to mean persons acting along the same general lines as the defendants, but in the exercise of an asserted individual right to do the various acts charged in the complaint. If the court looked merely to the allegations of the bill, and to other parts of the record to which special reference has been made, it would experience no difficulty in holding that the descriptive language last above quoted was only intended to embrace persons who were citizens of Kansas, and that the restraining order does not in terms extend to the petitioner. It would not feel at liberty to impute to counsel an intention to include a person within the terms of the order, and to subject him to possible penalties for its violation, whom they had taken special pains to exclude as a party defendant to their bill, and by so doing had deprived of the ordinary rights which belong to a party to a cause. Inasmuch, however, as the learned district judge by whom the order was granted has evidently construed and enforced it as reaching beyond the parties to the record, and as embracing the petitioner, who was not a citizen of Kansas, nor subject to be sued by the complainant in that state without his consent, the validity of the order may be determined on the assumption that such was its true scope and purpose.

Viewed from the latter standpoint, the court is of opinion that the restraining order was void, in so far as it concerned the petitioner, and that it afforded no legal basis for the contempt proceedings which were subsequently inaugurated against him, and against him alone, although there were, as it seems, many other persons concerned in the acts constituting the alleged contempt. It is somewhat remarkable that no attempt was made, prior to the contempt proceedings, to make the petitioner a party to the suit in which the injunction was granted. If he had been made a party, it may be that he would have waived his· privilege of being sued elsewhere, and consented to litigate with the complainant company the various issues tendered by its bill of complaint. If he had refused to do so, the case might nevertheless have proceeded against the other defendants by a simple dismissal as to the petitioner. Hopkins v. Stave Co., 49 U. S. App. 709, 714, 28 C. C. A. 99, 83 Fed. 912. But, be this as it may, it cannot be adjudged that, upon the state of facts heretofore recited, the restraining order extended to and bound the petitioner. If it be assumed that such was its true scope and purpose, then it was void, in the sense that it was beyond the power of the court to make it. And where one is imprisoned for the violation of an order which did not

extend to him, or for the violation of an order which was in excess of the jurisdiction of the court, if it in terms extends to him, he is entitled to a discharge by the writ of habeas corpus. Ex parte Rowland, 104 U. S. 604, 26 L. Ed. 861; In re Ayers, 123 U. S. 443, 8 Sup. Ct. 164, 31 L. Ed. 216; Ex parte Lange, 18 Wall. 163, 21 L. Ed. 872. The result is, in the language of the habeas corpus act (section 761, Rev. St.), that "law and justice," as applied to the facts of the case, require the petitioner's discharge; and it is so ordered.