### Ex parte LENNON.

(Circuit Court of Appeals, Sixth Circuit. October 2, 1894.)

#### No. 175.

1. HABEAS CORPUS—EFFECT OF WRIT.
   .The writ of habeas corpus does not perform the office of a writ of error or an appeal in respect to the proceedings complained of, if, in such proceedings, the court had jurisdiction of the subject-matter and of the person.

2. FEDERAL QUESTION—INTERSTATE COMMERCE.
   A suit by which a railroad company engaged in interstate commerce seeks to restrain other railroad companies, having relations with it in such commerce, from refusing it the rights and privileges accorded it by law, as an agency in such commerce, is one involving a federal question, since it seeks to enforce rights secured by the interstate commerce act.

3. INJUNCTION—VIOLATION OF—NOTICE.
   It is not necessary, in order that a person should be bound to obey an injunction restraining a party to a suit, his agents, etc., from doing an act, that such person should himself be a party to the suit, or should be served with a copy of the injunction order, but it is sufficient that, being such agent, he has actual knowledge that the order has been made, to make him liable to punishment if he aids or assists the party to violate the injunction.

Appeal from the Circuit Court of the United States for the Western Division of the Northern District of Ohio.

Application by James Lennon for a writ of habeas corpus. The circuit court denied the application, and the petitioner appeals.

This was a proceeding by habeas corpus instituted in the court below by the petitioner, James Lennon, to be relieved from imprisonment to which he was committed to enforce the payment of a fine imposed by that court upon him for the violation of an injunction ordered by it in a cause therein pending between the Toledo, Ann Arbor & North Michigan Railway Company, as complainant, and the Lake Shore & Michigan Southern Railway Company and five other railroad companies and two managing officers of other companies, as defendants. The circumstances out of which the present proceedings grew were substantially these: The locomotive engineers of the first-named railway had, in current phrase, "gone out on a strike." The Associated Brotherhood of Locomotive Engineers, to which they belonged, and of which the engineers on the Lake Shore & Michigan Southern and the other railroad companies were members, had taken up their cause, and indicated their purpose to refuse to take from or deliver to the Toledo, Ann Arbor & North Michigan Railway Company cars of freight coming from or destined to points on the line of that road, the natural consequence of which would be to compel the other railroad companies to discontinue interstate freight traffic relations with it. The Toledo, Ann Arbor & North Michigan Railway Company, finding itself in this situation, hampered and impeded in its business, filed its bill in the court below against the several railroad companies and officers above mentioned, setting forth its employment and agency in interstate commerce, and its relations with the other railroad companies in that business, and that these companies threatened to refuse and deny to it the rights and privileges accorded to it by law as an agency in such commerce, by refraining from receiving from or delivering to it freight which was in course of transportation from state to state, and praying for an in-

junction restraining the defendant companies, their officers, agents, servants, and employés, from refusing to offer to the complainant all reasonable and proper and equal facilities for the interchange of traffic with it; from refusing to receive from the complainant, for transportation over their respective lines, any and all cars of freight which might be tendered to them by it; and from refusing to deliver to the complainant all cars of freight which might be billed over its line of railroad. Upon the filing of this bill, the court awarded an injunction against the defendants therein, ordering and enjoining them, their officers, servants, agents, and employés, in the terms, substantially, as prayed in said bill. The injunction was issued accordingly, bearing date March 11, 1893. The petitioner was a locomotive engineer in the service of the Lake Shore & Michigan Southern Company, and a member of the association above mentioned. On the following 18th day of March, the complainant in that suit made an application to the court, stating that the petitioner and others having notice of the injunction had violated it, in that they had refused to haul certain cars laden with interstate freight, standing on the tracks and in the yards of the Lake Shore & Michigan Southern Railway, destined to delivery at points along the line of the Toledo, Ann Arbor & North Michigan Railway by the said last-named railway; that they had refused to obey the order and mandate of the court, and had deserted their locomotives and engines for the reason that they were required to haul the freight going to the Toledo, Ann Arbor & North Michigan Railway Company,—and praying that they be arrested and punished for their contempt. An order of arrest was issued, and the petitioner and others were brought before the court. The petitioner pleaded not guilty. A hearing was had, and evidence was adduced by both sides upon the issue thus made. The court, upon hearing the evidence and arguments of counsel for the respective parties, found the petitioner guilty, and adjudged him to be in contempt, and that he pay a fine of $50 and costs, and stand committed until the fine should be paid. These proceedings, including the opinion of the court therein, are reported in Toledo, A. A. & N. M. Ry. Co. v. Pennsylvania Co., 54 Fed. 746. The petitioner thereupon resorted to the same court for a writ of habeas corpus, and, this being denied, he appealed to the supreme court of the United States. That court, holding that it had no appellate jurisdiction in the case, dismissed the appeal. In re Lennon, 150 U. S. 393, 14 Sup. Ct. 123. He then renewed his application to the circuit court for the writ, and, that being denied, he brings his case here by appeal.

G. M. Barber, Frank H. Hurd, and J. H. Southard, for appellant.

George C. Greene, for L. S. & M. S. Ry. Co.

Before LURTON, Circuit Judge, and BARR and SEVERENS, District Judges.

SEVERENS, District Judge, having stated the case as above, delivered the opinion of the court.

In exercising its jurisdiction upon this petition, the circuit court was bound to observe the well-settled rule that the writ of habeas corpus does not perform the office of a writ of error or an appeal, in respect to the matters of fact involved in the proceedings complained of. If, in those proceedings, the court had jurisdiction of the subject-matter and of the person, the validity of its judgment cannot be collaterally attacked on this writ for error in the original suit, nor can the truth of the facts there found be controverted in the new and collateral proceedings. Ex parte Terry, 128 U. S. 289, 9 Sup. Ct. 77; Cuddy, Petitioner, 131 U. S. 280, 9 Sup. Ct. 703; Savin, Petitioner, 131 U. S. 264, 9 Sup. Ct. 699; In re Tyler, 149 U. S. 167, 13 Sup. Ct. 785; U. S. v. Pridgeon, 153 U. S. 48, 14 Sup. Ct. 746. In the latter case it was said by Mr. Justice Jackson, in delivering the

opinion of the court, that "under a writ of habeas corpus the inquiry is addressed, not to errors, but to the question whether the proceedings and the judgment rendered therein are for any reason nullities; and, unless it is affirmatively shown that the judgment or sentence under which the petitioner is confined is void, he is not entitled to his discharge." See, also, Church, Hab. Corp. 227; Turner v. Conkey, 132 Ind. 248, 31 N. E. 777. This court is, of course, bound by the same rule in determining the case on appeal. If the conviction and punishment ordered by the court were not open to an appeal, it was none the less final on that account. In the case of Johnson v. Wharton, 152 U. S. 252, 14 Sup. Ct. 608, the defendant sought to obviate the conclusive effect of a former judgment between the same parties in a suit tried and determined in a circuit court of the United States, upon the ground that the amount of that judgment was too small to enable the defendant to obtain a review in a court of error. The defendant was, however, held concluded by the former judgment, Mr. Justice Harlan, delivering the opinion of the court, saying that "the question is not controlled by the inquiry whether the judgment in the first action could be reviewed upon appeal or writ of error." In that opinion the rule was spoken of as a general one, "having its foundation in a wide public policy, and deeply imbedded in the jurisprudence of all civilized countries, that the final judgment of a court—at least one of general jurisdiction—competent, under the law of its creation, to deal with the parties and the subject-matter, and having acquired jurisdiction of the parties, concludes those parties and their privies in respect to every matter put in issue by the pleadings and determined by the court."

The errors assigned by the petitioner are four in number. The first is that the court erred in holding that there was a federal question presented by the bill of complaint, and that on that account it had jurisdiction of the case in which the order of injunction was issued. In support of this assignment it is argued that although the bill avers the citizenship of the complainant to be in the state of Michigan, and that of the defendants to be in other states, yet that it was subsequently developed in the proof that the Michigan Central Railroad Company, one of the defendants, was a citizen of Michigan, instead of Ohio, as alleged in the bill. While this is not technically a federal question, and so not strictly within the assignment of error, we shall disregard the variance. It may well be doubted whether, in view of the fact that defective and insufficient allegations of citizenship in the pleadings do not render the proceedings and judgments of the circuit courts absolutely void, but only voidable on error or appeal, the petitioner has any standing on which he can collaterally attack the jurisdiction on such ground, and set up for himself the privilege of determining that question for the court, and thereupon treat its mandate as void. Kemp's Lessee v. Kennedy, 5 Cranch, 173; Skillerns v. May's Ex'rs, 6 Cranch, 267; Cameron v. McRoberts, 3 Wheat. 591; McCormick v. Sullivant, 10 Wheat. 192; Ex parte Watkins, 3 Pet. 193. These and other later cases are reviewed in Dowell v. Applegate, 152 U. S.

327, 14 Sup. Ct. 611, where it was declared that the doctrine had been already established that a judgment or decree of a circuit court of the United States cannot be collaterally assailed, or treated as a nullity, even though its jurisdiction as to citizenship do not appear on the record. But there can be no doubt whatever that, so far as concerns the petitioner, the court had jurisdiction of the case. If the citizenship of the Michigan Central Railroad Company was not as stated in the bill, it was the privilege of that defendant to raise the question, and have the bill dismissed as to it, and thereupon the suit could proceed against the other defendants. Horn v. Lockhart, 17 Wall. 570. Upon the record, the requisite citizenship existed. It could not be tolerated that the petitioner should, upon an assumption that the bill would be challenged and disproved in this particular, undertake to defy an order of the court to which he was subject. But, independently of the citizenship of the parties, the case was one in which the complainant sought to enforce rights secured to it by a law of the United States; that is to say, the interstate commerce act. Although some criticism of the allegations of the bill in that regard is made by counsel for petitioner in the second branch of the argument on this head, and although it may be admitted that the pleading is not very precise, yet we think it sufficiently appears from the bill that the complainant therein set up rights accorded to it by that act, and sought relief from the court against their threatened violation. The contention, therefore, that the court had no jurisdiction of the case in which the proceedings for contempt took place, is not sustained.

Secondly, it is assigned as error that the court found that petitioner had such notice and knowledge of the order of injunction as to be punishable for a violation of its provisions. The argument is that— First, the petitioner was not a party to the suit; and, second, that he was not served with the order of injunction, or with a copy of it. As to this, it is not necessary that one should be a party to the suit in which an injunction issues, in order to render him liable to punishment for a violation of it. Any person who, having notice that such an order has been made against a party to the suit, aids and assists that party in its violation, is as much amenable to proceedings for contempt as if he were a party named in the record. Wellesley v. Mornington, 11 Beav. 181; Rorke v. Russell, 2 Lans. 242; High, Inj. § 1435. This rule is of peculiar application where the actual party is a corporation, for in such case the act enjoined, if done at all, must be done by some officer, agent, or servant to whose province the particular act relates. In the present case, the conduct imputed to the petitioner was one actively and directly impelling the Lake Shore & Michigan Southern Railway Company, whose servant he was, to the violation of the order of the court. In respect to the objection that he was not served with the injunction, or a copy of it, it is to be said, also, that this was not necessary. If he had notice of the fact that it was ordered, that was enough. High, Inj. § 1422, and cases there collected. But it is contended that the evidence on the hearing in the proceedings for contempt did not prove that he had such notice.

This question was raised and fully litigated on that hearing, and the court held against the petitioner. We are very strongly inclined to think that the question was concluded by that finding. But if that point were still open in the case, upon the suggestion that the court could not acquire jurisdiction over the petitioner without evidence of the necessary fact by simply deciding that it had such jurisdiction, reference to the proof which is in the present record shows that there was ample evidence from which the court could have found that the petitioner had notice of the order. It is claimed that the evidence showed that the petitioner, when required to take the objectionable car into his train, quit the service of his employer; but the evidence showed that he was shortly after in its service, and it was a question for the court whether his quitting was actual or otherwise. It is therefore unnecessary for us to discuss the question under what circumstances a locomotive engineer may quit the service of his company.

The third and fourth assignments of error are concluded by what has already been said. They are that the court "erred in holding that the acts set out in the affidavit were in violation of the order of injunction," and that "it erred in holding that under the facts, as stated in the bill, in connection with those set forth in the affidavit and those proven at the hearing, a court of equity had jurisdiction to issue the injunction which was issued in the case, and to punish appellant for contempt in disobeying its command." It is manifest that these are, in substance, mere allegations of error in the findings of fact and law by the court in the proceedings for contempt; and, under the rule preliminarily referred to in this opinion, they were not reviewable in the court below in this proceeding, nor can they be reviewed here. If there be an exception to this proposition in the fourth assignment, in so far as it refers to the jurisdiction of the court, it is covered by the points already decided. The question is much discussed by counsel for the petitioner in their brief whether the court could rightfully award what is termed a "mandatory injunction" in the principal case. Whatever objection there might be to this, it touches, not the jurisdiction, but the propriety of its exercise upon the then existing facts. Undoubtedly, a court of equity has authority to order an injunction of that kind. Whether it should do so in a given case is a matter depending upon its view of the facts, and, even though there should be error in the decision, that does not affect the validity of the order. It must be respected until reversed. The power and duty of the court in ordering such a writ were fully considered in an opinion delivered by Judge Taft upon a motion for an injunction against still other parties in the original suit out of which the present proceeding issued. Toledo, A. A. & N. M. Ry. Co. v. Pennsylvania Co., 54 Fed. 730.[1] We abstain from any consideration of the subject now, for the reason that that branch of the case has been brought here for review, and because, also, we are of opinion that the question whether the order here involved was a proper one, in the circumstances, cannot be collaterally reviewed in this proceeding. It follows that the order appealed from should be affirmed.

[1] The appeal in this case has been voluntarily dismissed since this opinion was filed.