AMERICAN STEEL & WIRE CO. v. WIRE DRAWERS' & DIE MAKERS' UNIONS NOS. 1 AND 3 et al.

(Circuit Court, N. D. Ohio, E. D.    October 18, 1898.)

1. EQUITY PRACTICE—FORMAL REQUISITES OF DEMURRER.
   A demurrer to a bill, which is not in proper form, nor verified by the defendant, nor certified by his counsel, as required by the equity rules, must be disregarded.

2. SAME—PROCEDURE ON DEFECTIVE DEMURRER.
   Where a demurrer to a bill is fatally defective under the equity rules, the plaintiff may disregard it, and take a decree pro confesso at the proper time, or may move to strike it from the files.

3. SAME—BILL AGAINST VOLUNTARY ASSOCIATIONS.
   Voluntary associations cannot be sued as such, and a bill against such associations by name, which also joins with them as defendants in its caption a large number of individuals, but which contains no allegations showing that such individuals compose, or are members of, such associations, is entirely defective as against the associations.

4. SAME—AMENDMENTS OF PLEADINGS.
   Under the federal statute of amendments (Rev. St. § 954), and the equity rules regulating the practice on amendments, a bill may be amended on the hearing of an application for a preliminary injunction by supplying allegations necessary to show that individual defendants on whom notice of the application has been served are officers and members of a voluntary association sought to be bound by the injunction, and the amendment becomes effective at once for the purposes of the hearing, which, unless new parties are made necessary thereto, or other considerations require it, need not be postponed to await the issuance, service, and return of new process, as it does not proceed upon the process of subpœna, but upon the notice prescribed.

5. INJUNCTIONS—RESTRAINING ACTION BY VOLUNTARY ASSOCIATION.
   An injunction to restrain action by a voluntary association need not be directed against such association by name, an injunction against members as individuals being effective to restrain illegal action by them in their associated capacity, which effects all the practical relief possible by injunction in such cases.

6. SAME—HEARING ON APPLICATION FOR PRELIMINARY INJUNCTION—DISCHARGE OF DEFENDANTS.
   On the hearing of an application for a preliminary injunction against a large number of defendants, a showing that certain defendants have not been served, that no showing is made against others, or that for other reasons they would be entitled to discharge on final hearing, is immaterial, as such defendants may be served or connected with the alleged unlawful acts on final hearing, and cannot be dismissed from the record at such stage of the proceedings; and it is one of the features of an interlocutory injunction that it reaches all who are parties, whether they have been served with process or not, and binds all who have notice of it, whether parties or not.   Nor is such a hearing changed in character to that of a final hearing, and the showing rendered material to discharge such defendants, by the fact that the action sought to be enjoined was taken by defendants in the conduct of a strike against employers, on the ground that a preliminary injunction, if granted, will end the strike, as such result can only follow by the voluntary action of the defendants in electing to abandon the strike, because they are not permitted to conduct it by means which the court pronounces unlawful.

7. SAME—EFFECT ON ABSENT PARTIES—EQUITY RULES.
   The effect of the reservation in equity rule 48, permitting a few individuals to sue or be sued as representing a numerous class, by which it is provided that "the decree shall be without prejudice to the rights and claims of all absent parties," is only to prevent such decree from concluding such parties, and to preserve their right to relitigate the same questions, and

does not prevent their being subsequently brought in and bound by the decree after a hearing, nor permit them to disregard an injunction of which they have notice.

8. PARTIES—SUIT AGAINST DEFENDANTS AS REPRESENTATIVES OF A CLASS.
   Under the equity rules permitting a few individuals to sue or be sued as representatives of a class, it is always a question to be determined on the particular facts in each case whether the parties to the record, as such representatives, fairly represent the interest or right involved. In the case of defendants no official or other authority is necessary, and the leaders of an organized strike may be sued as fairly representing the organization, without regard to their official connection with it.

This is a suit in equity by the American Steel & Wire Company against the Wire Drawers' & Die Makers' Unions Nos. 1 and 3, Walter Gillette, and others. Heard on an application to vacate service, on demurrer to the bill, and on application to amend the bill.

Squire, Sanders & Dempsey, for complainant.
Arnold Green and M. A. Foran, for defendants.

HAMMOND, J.  There is a motion by Fred Walker, one of defendants, to vacate the service of subpœna upon him as the president and chief officer of the Wire Drawers' & Die Makers' Union No. 3, and to dismiss the bill as to that union, and also as to the Wire Drawers' & Die Makers' Union No. 1, and to strike their names from the record, for the reason that there is no law or precedent for suing a voluntary association by its name, or for obtaining jurisdiction over it by service of a summons on one of its officers. There is also a demurrer by the same Fred Walker, "for the reason that the facts stated in said bill of complaint do not constitute a cause of action against said defendants." The title in the caption of this demurrer is as follows: "The American Steel & Wire Company, Complainant, vs. Wire Drawers' & Die Makers' Union No. 1, of Cleveland, Ohio, Defendants." This pleading probably follows the form used under the state code of practice, which is wholly inapplicable here, and it is altogether inartificial, according to our equity rules and practice. If it were in proper form, not being verified by defendant, nor certified by counsel, as required by equity rule 31, it must be wholly disregarded, if it be permissible at this stage of the proceeding, and on this application for a preliminary injunction, to hear it at all. National Bank v. Insurance Co., 104 U. S. 54, 76; Furnace Co. v. Witherow, 149 U. S. 574, 13 Sup. Ct. 936; Secor v. Singleton, 9 Fed. 809. It has not been set down for hearing by the plaintiff according to equity rule 33; and the defendant's remedy, on failure of the plaintiff to so set the demurrer for argument, is regulated by rule 38. Or, for the fatal defect above pointed out, the plaintiff may disregard it, and take a pro confesso, at the proper time, under equity rules 18 and 19; or move to strike it from the files. Goodyear v. Toby, 6 Blatchf. 130, Fed. Cas. No. 5,585, and the cases last above cited. Hence, any disposition of this demurrer now would be premature, and I only refer to it because it is presented by counsel as having a bearing upon the application for a preliminary injunction. If it suggested an entire

absence of jurisdiction over the parties or the subject-matter, the duty of the court would be to consider that suggestion, no matter how defective it may be as a pleading; but it is not that kind of a demurrer. It has been considered, however, in connection with and as a part of the motion to vacate the service. The demurrer, seemingly, is intended as a general demurrer for all the "defendants," though it is in terms only the demurrer of one of them, Fred Walker, namely; or else, taken with its caption, it is intended to be the demurrer of Wire Drawers' Union No. 1. Now, by the motion filed it appears from its recitals that this defendant Walker is the president of Wire Drawers' Union No. 3, not No. 1, mentioned in the demurrer; and yet in the motion he also assumes to represent Union No. 1, as well as Union No. 3, and it may be that he assumes by the demurrer to represent all the defendants, the two unions as well as all the rest. The truth is, there is too much generality and want of precision of statement in all the pleadings, the irregularities being quite embarrassing to the disposition of the present motion to vacate the service.

The bill is unquestionably defective, and there is an application to amend it, which should be considered along with this motion. While alleging that they are "voluntary associations," the bill sues the two unions as if they were suable entities, as corporations are, and the subpœna issues against them as such. There is not an averment in the bill which undertakes to reach them otherwise than by this general suit against them. It is too plain for any argument that they cannot be so sued. The right to sue and be sued is a corporate franchise, must be granted by legislation, and voluntary associations only possess it under the circumstances mentioned in Liverpool Ins. Co. v. Massachusetts, 10 Wall. 566. This bill does not, by its allegations, connect any of the defendants with these unions, unless the caption, which is equivocal in this regard, may be taken to aver that all the defendants named therein are members of them. If so, no distinction is made between the two, showing which of the defendants are members of the one and which of the other. The punctuation of the caption, however, would indicate that the defendants are sued individually, and not as members of the unions. It reads thus: "The American Steel & Wire Company, Complainant, vs. Wire Drawers' and Die Makers' Union No. 1, of Cleveland, Ohio, and Wire Drawers' Union No. 3, of Cleveland, Ohio, of the Federated Wire Trades of America; the respective members of said unions; Walter Gillette; E. A. Cliff; F. Marquardt; and many others, similarly named, to the number of 86—Defendants." This would seem to indicate that the two unions were sued respectively, then "the respective members of said unions" in solido, and then the individuals named as individuals, and not as members or representatives of the unions. The allegations of the bill do not help this in any way. The individuals are not averred to be officers or members of the unions, or to have any connection with them, except in the eighth paragraph it is related that "certain committees [of which the defendant Gillette was a member] from said unions have called upon the officers and agents of your

orator for the avowed purpose of demanding a recognition of a certain scale provided and dictated by said Gillette and his associates, in connection with and through the medium of said unions." This is all there is of it.    Even the conspiracy paragraph No. 13 of the bill only avers that "said defendants are conspiring together for the unlawful purpose," etc., and does not at all advise us of the particulars of the conspiracy in relation to the representative attitude of any of the defendants.    So that the bill is entirely defective as a suit against voluntary associations.

The subpœna and rule to show cause follow the identical words of the caption, and command the appearance of the defendants in those words.    The return No. 2 of the marshal states that he served the process on "Wire Drawers' Union No. 1 by delivering a copy of the bill to R. Heiden, treasurer of said union, the president of said union not found in my district"; and his return No. 1 states that he served the process on "Wire Drawers' Union No. 3 by delivering a copy to Aug. Maltois, vice president of said union, the president of said union not found in my district."    Both of these officials are named as defendants, but neither in his official capacity, and there is no allegation of the bill connecting them with the unions. The amendment that is asked cures this defect of substantial and specific allegation very thoroughly, but counsel of the defendants object to its being filed now, and insist that the proof shows that Gillette is not the president of this union No. 1, but only a member of the executive committee of the Federated Wire Trade, another and distinct organization, not sued by this bill.    But, however that may be, the amendment avers that Gillette is president of the Union No. 1 and Walker of Union No. 3, and now specifically states that Cliff, Marquardt, Haak, Heiden, and about 40 others named in the amendment are members of these voluntary associations, and asks that Gillette and Walker, the respective presidents, and the named members, be made parties "as representing said two voluntary associations and its membership, as fully as if each member thereof were made a party defendant hereto."    It also avers that the membership is numerous, that all of them are not known to the plaintiffs, and that it is impracticable to make them all parties to this bill.    Counsel for defendants say, in their brief, that some 10 persons named in this amendment are not members of these unions.    That would seem quite immaterial when there are 30 members left to represent the whole; but, technically, we cannot try that question now, and in this manner, and only on a proper plea in abatement, which is a sufficient answer to the suggestion, as also it is to that about Gillette not being the president of Union No. 1.

It is also objected that the amendment cannot now properly be made to serve the purposes of this application for injunction, but that it must take the regular course, by having process issued, notice served, and a new application for injunction made in that behalf.    As I have repeatedly said in many judicial judgments, the federal statute of amendments is the most liberal and imperative since the ancient and beneficent statute of jeofails.    Rev. St. § 954. It commands that the court "may at any time permit either of the

parties to amend any defect in the process or pleadings, upon such conditions as it shall, in its discretion and by its rules, prescribe." This applies to defects appearing on an application for preliminary injunction as well as to any other hearing, both in its letter and the spirit of liberality indicated by this and the other provisions of the statute. The court may use its discretion as to the conditions imposed, and prescribe rules to that end; but I doubt if it may ever refuse to receive an amendment, and thereby annul the statute, which permits the parties to amend "at any time" upon compliance with such conditions as the rules prescribe. Following both the letter and spirit of the statute, which is old as the courts themselves, our equity rules regulate the practice of amendments with great particularity, and this application is fully within them. Equity Rules 28, 29, 45, 46. So it is in accordance with the general equity practice to allow the bill to be amended on the hearing of interlocutory applications. 1 Daniell, Ch. Prac. 492.

As to the suggested necessity for process before the amendment can be effective, that objection overlooks the fact that we are not proceeding on this application for a preliminary injunction upon the process of subpœna, but upon the notice prescribed in the rules ordered by the circuit judge, and especially designed for this hearing. The subpœnas issued are not returnable until the first Monday in November next, while this rule to show cause against an injunction pendente lite is returnable now, and the process demanded by this objection may be hereafter had in due time, according to the equity rules, for all other purposes. Meantime, however, as already shown, the amendment, if allowed to be filed, must stand good for the present purpose, and becomes as effective as the original bill on the hearing of the application for preliminary injunction. It would be, however, proper practice to postpone this hearing for a further notice or another rule to show cause against the amended bill, if the circumstances required it. If altogether new parties are to be made, having no notice of this hearing, postponement would be essential; but such is not the fact, in the substantial particulars. The notice already given to parties on the record has been sufficient to bring the unions here, and we are now dealing with their motion to be dismissed. Being here for that purpose, they are available for all the purposes of this interlocutory application for an injunction, one of which is to receive and submit to any amendment of the bill that may be granted in aid of the application. Other circumstances might require that the hearing should be postponed to admit the parties for some defense against the amendment not now open upon this interlocutory hearing; but they do not exist. Most of these defendants, and especially the chief officers, if not all, who are named in the proposed amendment to the bill, have been here defending against the claim for an injunction, and the facts relating to the share their unions have taken in the strike have been put in evidence as fully as they desired to present them, or as they would be at any delayed hearing, and quite as fully as is at all necessary for any defense they could properly make against an interlocutory injunction. Indeed, I am not sure but

that the amendment is quite unnecessary, for the preliminary purpose of an application for an injunction pendente lite, notwithstanding the grave defects of the bill as one against voluntary associations. They need not be enjoined eo nomine, or in solido, qua associations, for an injunction against numerous members in their individual capacity would operate to restrain them from any unlawful action in their associated capacity as well, and that is practically about all the relief that is possible by way of injunction against associations, even when they are incorporated. It is rather a barren ideality to enjoin an artificial entity, and, after all, the process operates, and punishment by contempt proceedings secures obedience, mostly through the individuals who compose or represent it; and in that view, without the amendment, there are probably enough of the members in court for all the practical purposes of the plaintiff's case. Therefore these numerous objections might be of little practical value, if sustained, so far as relates to this interlocutory application. But I have treated them with that careful consideration which the industrious ingenuity of counsel deserves.

And I may as well now dispose of another objection pertinent here, as well as to the general defense, though it has not been presented as an objection to the application for leave to amend the bill as proposed. Counsel has prepared elaborate and useful schedules of this small army of defendants, showing those who have answered, those who have been served and not answered, those who are out of the jurisdiction as shown by the proof, those who have not been served at all, and about whom nothing is shown, those against whom there is no evidence in the affidavits filed, those "who have been seen once only in the vicinity," and those who have been seen "more than once." By this process of cancellation and elimination we have a showing that only 13—a corporal's guard, comparatively— are up for "government by injunction." All this would be very well if this case were on final hearing, and the question were one of perpetual injunction. Then such elimination would be necessary on the plainest principles of equitable remedy and practice. But not so now. It is premature labor and consideration, for none of the parties can be now dismissed from the record, nor should the preliminary injunction be withheld for any of the reasons suggested by the schedules, as will presently be shown. Nor do I overlook the forcible argument and suggestion of counsel that practically, in a case like this, a preliminary injunction ends the strike. If you "break the strike" by a preliminary injunction, it is urged, there is nothing more to litigate about. This may be true if the strike be then wholly abandoned, but otherwise it is not true, and its chief force is in the grave duty imposed on the court of careful consideration to see that no preliminary or other injunction issues, unless according to the law and right of the case. That responsibility is not oppressive in its weight, as it should not be, for the reason that no court can or should shirk it, whatever others may be allowed to do in other branches of governmental action, but is always felt alike in all cases as a potential inducement to careful judgment, whether at

the final hearing or on interlocutory application. Yet a court is not "a strike breaker," as one of the affiants has been denominated, and is not engaged in that business, as such, whether it be a state or federal court, and its duties are not properly to be administered on any such suggestion. If that should be the effect of a preliminary injunction, or of a final decree, for that matter, it is only because the defendants voluntarily will have it so, and prefer to abandon all rightful action in maintaining their organized strike, because they cannot act wrongfully, or, at least, cannot do those things which are pronounced wrongful by the courts. But for that abandonment the courts are in no wise responsible; nor should that fact influence its judgment. What is really the outcome of the argument, in its logical effect, is that, if strikers cannot decide for themselves what is right and what is wrong, they must abandon the strike. But it is apparent, on a moment's reflection, that no class of the community has, can have, or should have that power. Strikers would be, indeed, a favored class if it were conceded to them. And, happily, they do not ask it, but yield cheerful and ready obedience to the law as declared by the courts. Mr. Justice Brewer, in the Debs Case, 158 U. S. 564, 598, 15 Sup. Ct. 900, replying to a somewhat similar suggestion found in the proof,—"that it was simply the United States courts that ended the strike,"—commends the action of the strikers, "who unhesitatingly yielded when the question of right or wrong was submitted to the courts, and by them decided upon the settled conviction of all citizens that to those tribunals is committed the determination of right and wrong between individuals, masses, and states." But the court here was commending the giving up of that which was by the legal decree declared wrongful, and not suggesting that peaceable and lawful action in maintaining a strike must be abandoned. Therefore it is an answer to the suggestion that this hearing is, in effect, the same as a final hearing, because of such a result, that it is not a necessary legal consequence of an interlocutory decree, or even of a final decree for a perpetual injunction. Under neither would the defendants be required to abandon a lawfully conducted strike, and, if they did, it would be voluntary, and a confession that only by lawlessness can a strike be successfully maintained. The case, therefore, on this application, must be conducted as an interlocutory proceeding, and not a final hearing, as in all other cases. And it is one of the features of an interlocutory injunction that it reaches all who are parties, whether they have been served with process of subpoena or not, whether they have appeared or not, whether they have answered or not; and it binds all who have notice of it, whether they are parties or not. It is old as the practice of injunctions that all having notice of it must obey it. If not parties to the suit, they aid or abet those who are, if the injunction be violated by those who know of it. Hence we are not, in an interlocutory proceeding, required to scrutinize, as on a final hearing, the service of process. It is always time enough when one violating an injunction is ruled for a breach of it to inquire whether there has been binding notice on him or not. Equity Rule 10; 2 Daniell, Ch. Prac. 1061, 1673, 1683, et seq. If a breach has been committed by

a person who was not named in the writ or order, the motion must be that he may be committed for his contempt in knowingly assisting in the breach.    Ex parte Lennon, 166 U. S. 548, 551, 17 Sup. Ct. 658; Id., 12 C. C. A. 134, 64 Fed. 320, 323; Toledo, A. A. & N. M. Ry. Co. v. Pennsylvania Co., 54 Fed. 746, 750; 2 Daniell, Ch. Prac. (5th Ed.) 1685, citing Wellesley v. Mornington, 11 Beav. 180, 181; Seaward v. Paterson [1897] 1 Ch. 545, cited by Judge Clark in the note to Railroad Co. v. McConnell, 82 Fed. 65, 88.    If the ruling of Judge Foster, so much urged by counsel for defendants, in Oxley Stave Co. v. Cooper's International Union, 72 Fed. 695, 697, can be taken to mean that an injunction cannot bind persons not formally parties to the bill, and served with notice of process, under any circumstances, it is contrary to the foregoing decisions; but if, however, it only means that the writ will not issue directly against any persons not named and formally made parties to the bill, it is not adverse to the general practice on the subject.    It is only intended, perhaps, by the learned judge, to assert the force of the reservation contained in equity rule 48, which regulates our practice on this subject, and which has always been understood to modify somewhat the general doctrine in England that parties not formally named as such in the bill, or formally served with process, may yet be bound on the principle of representation to the fullest extent that those are bound who are their representatives in the suit.    The language of the reservation is that in such cases "the decree shall be without prejudice to the rights and claims of all absent parties."    The rule especially is framed to allow a suit to proceed without making all the members of an association or of a class of defendants formal parties; but, while preserving the right of the absent ones to afterwards litigate for themselves the same question, it does not prohibit the whole class, when plaintiffs, from taking the benefit of a decree in favor of those who represent them; nor preclude a plaintiff, who has sued the whole class by their representatives, from binding the absent parties by supplemental proceedings to bring them in, when known, if necessary, and subject them to the decree, when they have had that opportunity to defend against it.    In cases like this, of injunction, against large bodies or masses of alleged trespassers upon the rights of the plaintiff, the ordinary practice of granting leave to make new parties by supplemental process, as occasion may require, affords adequate redress for the plaintiff against any who are trespassing, in fact, as active agents in the alleged wrongdoing; and by taking care that all persons at large who menace his rights shall have particular notice of the injunction, if any one or more engage in the forbidden acts after such notice, proceedings may be had for aiding and abetting in the breach which was forbidden to the defendants.    To this effect are all the authorities above cited.    The equity rule, in my judgment, was not intended to affect this practice by its reservation; nor does Judge Foster, in the case cited, intend to assert that absent members of an association are not to be affected by an injunction against those of their associates who are formal parties to the record, so that they must be dismissed, as in that case, before final decree, when not served, as a matter of neces-

sity. Whether parties not served are to be bound by any injunction which may be ordered is not a question arising now, but will arise if any proceedings should be taken to bind them hereafter, or charge them with a breach. The application to dismiss the bill as to them should not be granted, for the plain reason that the plaintiff may yet serve them with subpœna, or otherwise notify them, and seek to extend the injunction formally as to them, or have them in the record at the final hearing.

We come now to the further objection to this amendment that it does not yet contain the specific allegations necessary in a bill to charge a few persons as the representatives of the many. Equity rule 48, allowing parties to be left out of the bill where they are too numerous, has already been referred to, but it should be read along with the series of rules beginning with rule 47 and extending to and including rule 54, from which it will be seen that the practice is carefully designed to regulate such suits according to the kind of classes which are sued, ordinarily; but there is not any specific provision for suits against unincorporated or voluntary associations. And there does not seem to be any uniform practice in the method of suing such societies. All that can be said is that, technically, it is a suit against the members individually, and not in solido against the company, as in the case of incorporated societies. The chief officers, for purposes of suits, represent a corporation, generally, and they may so represent a voluntary association; but there is no technical requirement that process shall be served on them exclusively or generally, though by a natural analogy that would be a convenient method to adopt in suing a voluntary association or in bringing a suit for it. But the association may, and often does, appoint or select its own agencies for bringing its suits, formally or informally, by a selection of such as, for the occasion, it chooses to adopt. In suits against it the plaintiff is left to get along as best he can by aid of the rule allowing a few of the mass to be selected as representatives, and by aid of the court in ordering that the proceedings shall be conducted according to the particular circumstances and the particular nature or purpose of each suit, all absent parties not actually served with process being protected by the modification contained in the reservation of equity rule 48, already commented on, so far as the courts of the United States are concerned. Mandeville v. Riggs, 2 Pet. 482; Beatty v. Kurtz, Id. 566, 584; Liverpool Ins. Co. v. Massachusetts, 10 Wall. 566, 570, 574, 575; Smith v. Swormstedt, 16 How. 288, 302; Ayres v. Carver, 17 How. 591; McArthur v. Scott, 113 U. S. 340, 395, 5 Sup. Ct. 652; U. S. v. Old Settlers, 148 U. S. 427, 480, 13 Sup. Ct. 650; Hotel Co. v. Wade, 97 U. S. 13, 21; Payne v. Hook, 7 Wall. 425, 431; West v. Randall, 2 Mason, 181, Fed. Cas. No. 17,424 (volume 29, p. 722); U. S. v. Elliott, 64 Fed. 27, 35; Oxley Stave Co. v. Coopers' International Union, 72 Fed. 695, 697; Railroad v. McConnell, 82 Fed. 65, 88; Fost. Fed. Prac. §§ 45, 47, 48, 108; Beach, Mod. Eq. Prac. §§ 65, 66; 1 Daniell, Ch. Prac. (5th Ed.) 272. The case of West v. Randall, supra, is a very full exposition of the practice by Mr. Justice Story, who refers to voluntary associations among the

enumerated instances where the court is satisfied with bringing so many before it as may be considered as fairly representing the right, and, honestly contesting for the whole, may therefore bind, in a sense, that right, but will permit such parties as are absent, on a rehearing or otherwise, to be heard more distinctly by the court, if desired.   Of course, as he says, the principle always supposes that the decree can fitly be made, as between the parties before the court, without substantial injury to third persons.   It is said in Smith v. Swormstedt, supra, that care must be taken that the persons brought on the record fairly represent the interest or right involved, so that it may be fully and honestly tried; which is approvingly repeated by Mr. Chief Justice Fuller in U. S. v. Old Settlers, supra.   Again, in McArthur v. Scott, supra, Mr. Justice Gray remarks that, "where a suit is by or against a few individuals as representing a numerous class, that fact must be alleged of record, so as to present to the court the question whether sufficient parties are before it to properly represent the rights of all."   And, finally, Ayres v. Carver, supra, furnishes an instructive illustration of the case where the parties, no matter how numerous, cannot find representation by a few, and where this practice is not applicable.

The proposed amendment fully conforms to the practice as displayed in the foregoing cases.   From the very nature of the case, there are sufficient of the members of the unions to defend this suit, and enough to answer all practical purposes of the orders and decrees that may be asked against them.   The fact of numerous membership and the necessity for proceeding against a few are stated, and the court can see that those mentioned fairly represent the whole.   The fallacy of the objection made is in supposing that the required "representative" capacity resides in some official or authorized representative quality, attaching by reason of the action of the union itself in conferring it.   As plaintiffs that might be required, as a reading of the above cases will show, but as defendants it is not.   It depends on the facts in each case, and the court will regulate that matter by its decree, according to circumstances, and will insist that those brought in shall fairly represent the whole, according to the nature of the relief sought and the peculiarities of the association.   In a case of an organized strike of laborers it is fair enough if the leaders of the strike be brought in to represent the organization, no matter what their official relation to their society may be.   The result is that the motion to vacate the service of the process and rule to show cause against the two unions, which was reserved at the hearing, must be denied, and the plaintiffs have leave to file their amendment, after it has been properly verified by oath.   The demurrer will stand over for future proceedings, according to the rules of practice in that behalf.   Ordered accordingly.